TASTEE FREEZ DE PUERTO RICO, INC., peticionario, *v.* NEGOCIADO DE SEGURIDAD DE EMPLEO y HON. SECRETARIO DEL TRABAJO, recurridos.

*Número:* O-78-205    *Resuelto:* 28 de diciembre de 1981

810

*Benjamín Rodríguez Ramón, Teodoro Peña García* y *José Raúl Cancio Bigas,* abogados de la peticionaria; *Jorge Soto Marrero, Miguel Rodríguez Villanueva* y *Lydia Lizarríbar Buxó,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

En nuestra opinión original en este caso, 108 D.P.R. 495 (1979), revocamos una determinación del Departamento del Trabajo de Puerto Rico, sancionada por el Tribunal Superior, al efecto de que tanto los empleados de los arrendatarios de Tastee Freez como los arrendatarios mismos son empleados de tal firma. Se solicitó la reconsideración de nuestro dictamen. Estimamos que debemos reexaminar el tema.

Tastee Freez, como indicamos originalmente, opera un negocio de comestibles ligeros los que vende en Puerto Rico en dieciocho establecimientos de su propiedad. La cuestión a resolver es si los arrendatarios y empleados de estos establecimientos son empleados de Tastee Freez, exclusivamente para fines de la Ley de Seguridad de Empleo, Ley Núm. 74 de 21 de junio de 1956 (29 L.P.R.A. sec. 701 y ss.), y de la Ley de Beneficios por Incapacidad, Ley Núm. 139 de 26 de junio de 1968 (11 L.P.R.A. sec. 201 y ss.). La decisión de este asunto no entraña determinación

alguna sobre si las referidas personas constituyen o no empleados bajo otras disposiciones de ley.

■ El Art. 2(k)(5) de la Ley de Seguridad de Empleo, 29 L.P.R.A. sec. 702(k)(5), provee:

El servicio prestado por una persona será considerado como empleo bajo esta ley independientemente de si existe o no una relación obrero-patronal, a menos y hasta que se demuestre a satisfacción del Secretario que—

(A) En relación con la prestación de su servicio, tal persona ha estado y continuará actuando sin sujeción a mando o supervisión, tanto como cuestión de hecho como bajo su contrato de servicios; y

(B) Tal servicio es prestado bien fuera del curso usual del negocio para el cual se trabaja o fuera de todos los sitios de negocio de la empresa para la cual se trabaja; y

(C) Dicha persona está usualmente ocupada en algún trabajo, profesión o negocio independientemente establecido de la misma naturaleza de aquel comprendido en el servicio prestado.

Esta misma definición se reproduce en la Ley de Beneficios por Incapacidad. 11 L.P.R.A. sec. 202(j)(5).

La raíz de los criterios reseñados, conocidos en conjunto como la prueba "ABC", se remonta a un borrador de proyecto de ley preparado en 1937 por la Junta de Seguridad Social. T. F. Broden, *Law of Social Security and Unemployment Insurance*, Mundelein, Illinois, Callaghan & Co., 1962, pág. 87. El primer estado en aprobar la prueba "ABC" fue Wisconsin. *Avon Products, Inc.* v. *Srio. del Trabajo*, 105 D.P.R. 803, 809 (1977). Un gran número de estados la adoptó posteriormente, en todo o en parte. Asia, *Employment Relation: Common-Law Concept and Legislative Definition*, 55 Yale L.J. 76, 83–85 (1945).

Ha habido una dificultad histórica en la aplicación de la prueba. El problema estriba en que una minoría de jurisdicciones insiste, al interpretar los criterios "ABC", en utilizar conceptos del derecho consuetudinario desarrollados para medir la responsabilidad torticera del patrono

hacia terceros por actos de sus empleados. De ahí que lo verdaderamente determinante en tales foros sea la existencia o no de control, según se entendía el término tradicionalmente en el derecho común angloamericano. Willcox, *The Coverage of Unemployment Compensation Laws*, 8 Vand. L. Rev. 245, 256–259 (1955). La legislación federal está también atada al antiguo entendido de la relación obrero-patronal. Broden, *General Rules Determining the Employment Relationship under Social Security Laws: After Twenty Years an Unsolved Problem*, 33 Temp. L.Q. 307 (1960). La mayoría de los estados que utilizan en alguna forma los criterios "ABC" estiman, no obstante, que estos deben interpretarse a la luz de los propósitos singulares de la legislación sobre el seguro contra el desempleo. Willcox, *op. cit.*, pág. 259. A pesar del texto de la legislación federal, el Tribunal Supremo de Estados Unidos se ha inclinado igualmente a trascender la doctrina convencional del derecho común en este campo y a definir en otras formas el vocablo "empleo". *United States* v. *Silk*, 331 U.S. 704 (1947); *Bartels* v. *Birmingham*, 332 U.S. 126 (1947).

En *Avon Products, Inc.*, supra, págs. 805–807, recalcamos la naturaleza singular del vocablo "empleo" en el contexto de nuestra legislación y el objetivo distinto a que sirve dentro del marco del derecho común. Allí dijimos:

> El término empleo ha sido objeto de consideración por este Tribunal en contextos muy variados. . . .
>
> En el presente caso, sin embargo, el término empleo tiene bajo la Ley de Seguridad de Empleo una configuración propia cuyo propósito es precisamente obviar las dificultades y el curso azaroso que ha seguido la jurisprudencia al considerar la diversidad de criterios que delimitan el ámbito de esta relación. . . .
>
> En el derecho común la responsabilidad del principal por los actos de sus empleados o agentes se fundaba en el control que aquél ejercía o podía ejercer sobre los actos de éstos para aminorar el riesgo de daño. . . . Quizás pudiera justifi-

carse en algunos casos el criterio de control como medida de responsabilidad por el hecho ajeno. Pero no le vemos conexión alguna con el riesgo de desempleo que es consecuencia de múltiples y complejos factores socio-económicos. . . . Esta discrepancia fundamental en los propósitos de ambos preceptos legales requiere la aplicación de criterios más afines con la política pública de la Ley de Seguridad de Empleo. . . .

Nuestra Ley de Seguridad de Empleo no deja margen a dudas sobre su propósito. En la Exposición de Motivos se expresa:

La inseguridad económica producida por el desempleo es una seria amenaza a la salud, seguridad y bienestar del pueblo de Puerto Rico. El desempleo es, por lo tanto, materia de interés e incumbencia general que requiere la adopción por la Asamblea Legislativa de medidas adecuadas tendientes a evitar su desarrollo y a aliviar la carga que el mismo produce y que recae sobre el trabajador desempleado y su famila.

La protección contra la inseguridad económica, contra el riesgo de desempleo, es en consecuencia el factor clave para precisar el significado de los criterios que estipula la legislación que nos ocupa. Conceptos derivados de otros usos de la voz "empleo" no vienen al caso.

Debe señalarse también que nuestra legislación es más lata que la fuente de donde parte. La versión típica de la introducción a la prueba "ABC" provee, en inglés (Asia, *op. cit.*, pág. 84):

(5) Services performed by an individual *for wages* shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of commissioner that. . . . (Énfasis nuestro.)

Nuestra legislación no requiere que los servicios se compensen sobre la base de *salarios*. Pueden utilizarse otras formas de compensación —las comisiones, otros modos de participación— sin que por ello la persona deje de ser empleado, en caso de no cumplirse las tres disposiciones de

la prueba "ABC". Obsérvese, además, que la parte de nuestra legislación correspondiente a la citada añade al texto típico una frase muy significativa, la cual subrayamos:

> (5) El servicio prestado por una persona será considerado como empleo bajo esta ley *independientemente de si existe o no una relación obrero-patronal,* a menos que y hasta que se demuestre a satisfacción del Secretario que. . . . (Énfasis nuestro.)

En *Avon Products, Inc.* ante, págs. 808–809, señalamos el extraordinario impacto de esta nueva frase:

> La definición formulada en la ley establece con meridiana claridad la presunción de que todo servicio prestado por una persona constituye empleo aun cuando no exista una relación de empleo tradicional u ortodoxa. Inequívocamente el legislador subraya el propósito de que no se excluya de la protección de la ley a ninguna persona, aun las que pudieran considerarse contratistas independientes de acuerdo con las restricciones técnicas tradicionales.

Es a la luz de este trasfondo que deben examinarse los criterios "ABC" para resolver si en este caso se cumplen sus requisitos. Los tres requisitos tienen que cumplirse para excluir al empleado de esa categoría. *Revlon Serv., Inc.* v. *Employment Division,* 567 P.2d 1072, 1074 (1977). La carga de la prueba recae sobre quien alega que se satisfacen los tres criterios y que el alegado empleo no lo es. *Sears Roebuck & Co.* v. *Dept. of Industry, Labor and Human Relations,* 280 N.W.2d 240 (1979). Cada pleito de esta naturaleza exigirá análisis independiente.

*El criterio "A".* Este primer criterio, al efecto de que la persona a quien se le imputa no ser empleado "ha estado y continuará actuando sin sujeción a mando o supervisión, tanto como cuestión de hecho como bajo su contrato de servicios" difiere, por las razones expresadas, del concepto "control" que integra el principio de *respondeat superior* y otras doctrinas del derecho común. Para

satisfacer este criterio, el supuesto patrono tiene que probar que él no tiene derecho alguno a dirigir la conducta del agente. La mera posibilidad de control futuro basta convertir al agente en empleado para los fines de las leyes que aquí nos conciernen. Asia, *op. cit.*, págs. 86–87. El término "control" debe interpretarse a la luz de las realidades económicas subyacentes y del propósito de la legislación. El análisis abstracto o puramente verbal del acuerdo no es suficiente.

El contrato que nos ocupa contiene las siguientes cláusulas de interés para el estudio del criterio "A". Tastee Freez es la dueña de todos los establecimientos. Ella únicamente los arrienda, junto a su plusvalía y el nombre "Tastee Freez" o "Carrol's" (cl. 1). El término del arrendamiento es técnicamente un año (cl. 2), pero cualquiera de las partes puede cancelarlo unilateralmente, sin necesidad de probar justa causa, mediante notificación por escrito de no menos de treinta días (cl. 24). El arrendatario deberá contar con la autorización escrita de Tastee Freez antes de efectuar alteraciones en la propiedad, mueble o inmueble (cl. 4). Tastee Freez es quien reemplaza el equipo deteriorado (cl. 12). El arrendatario está obligado a utilizar el nombre de Tastee Freez o Carrol's en la operación del negocio y se obliga "a no usar para la venta ninguna mezcla de mantecado, syrops [*sic*], hamburgers y/o cualquiera otro producto similar que no sea autorizado por escrito por la arrendadora" (cl. 13). El arrendatario tiene que depositar diariamente el 81% del producto de sus ventas al detalle en una cuenta de Tastee Freez, en el banco que esta designe, para garantizar sus obligaciones de pago a Tastee Freez. El Supervisor de la arrendadora recogerá el depósito y la liquidación diariamente (cl. 17). El Supervisor de Tastee Freez tendrá el derecho en todo momento de entrar al negocio e inspeccionar los productos que se están vendiendo para asegurarse de su calidad (cl. 18). El Supervisor puede también

verificar dentro del negocio que se está cumpliendo con otras obligaciones del arrendatario bajo el contrato (cl. 19). El Supervisor puede requerir que se pinte el edificio, a costo del arrendatario, cuando su condición lo requiera, pero nunca menos de dos veces al año (cl. 19). El Supervisor puede exigir que se emplee a más personas a fin de mejorar el servicio (cl. 20). El arrendatario, por último, no puede ausentarse del negocio por más de 24 horas sin avisar al Supervisor con no menos de 72 horas de anticipación para que este haga los arreglos pertinentes.

Gran parte de estas cláusulas obedecen sin duda al legítimo interés de la arrendadora de controlar la calidad de su *producto* y *proteger el nombre y la plusvalía de su* negocio, mas otras forjan una cadena tan corta y potente que al menos crean una posibilidad real de control de la prestación del servicio. El arrendatario está, en términos económicos prácticos, virtualmente a la merced de la compañía arrendadora. Su contrato puede ser revocado abruptamente en cualquier momento. Sus ganancias o pérdidas pueden ser afectadas decisivamente por exigencias de la arrendadora. Tastee Freez controla férreamente el flujo diario de las entradas brutas.

No tenemos que expresarnos definitivamente sobre el cumplimiento o no del criterio "A" en este caso, no obstante, ya que la inobservancia de los otros requisitos es evidente.

*El criterio "B".* El criterio "B" exige que el servicio sea prestado "bien fuera del curso usual del negocio para el cual se trabaja o fuera de todos los sitios de negocio de la empresa para la cual se trabaja". La primera alternativa requiere que el servicio se preste fuera del curso usual del negocio del principal o patrono. Tal alternativa se preocupa por determinar si el negocio en el que se trabaja es de índole tan equivalente a la del negocio del patrono que en realidad lo que se hace es llevar a cabo el negocio de este. No tiene pertinencia a tal efecto, por tanto, la cues-

tión de si el supuesto empleado tiene su propio estableci-miento. La segunda alternativa es la que tiene que ver con el sitio en que se trabaja. Asia, *op. cit.*, pág. 87.

▪ De lo expuesto sobre las cláusulas del contrato se desprende que Tastee Freez no cumple ninguno de los dos extremos del criterio "B". La totalidad del negocio es de Tastee Freez. Los arrendatarios prestan sus servicios en el curso usual de ese negocio. Los servicios se prestan, además, en los establecimientos de Tastee Freez, no fuera de los sitios de negocio de esta, según requiere el criterio "B". Recuérdese que en *Avon Products, Inc.*, ante, pág. 810, resolvimos que, por efectuarse las ventas del producto de casa en casa, cada casa constituía el sitio de negocio de Avon. Se incumplió allí el criterio "B". Se incumple aquí también, a fortiori.

▪ *El criterio "C"*. Aunque el incumplimiento de uno solo de los tres criterios basta para que se considere "empleado" al trabajador concernido para los fines de la legislación que venimos analizando, importa que nos refiramos también al criterio "C" por el papel crítico que desempeña en la aplicación de la fórmula "ABC". El crite-rio "C" exige que la persona esté "usualmente ocupada en algún trabajo, profesión o negocio independientemente establecido de la misma naturaleza de aquel comprendido en el servicio prestado". Si el negocio existe tan solo por razón de una relación especial con determinada empresa y desaparecía de liquidarse ésta, no se satisface el criterio "C". *Asia*, op. cit., pág. 87–88. Se da en tal caso la dependencia económica y la amenaza de desempleo que motiva la legislación bajo estudio. En el caso presente el contrato entre las partes revela, con toda claridad, que los arrendatarios de Tastee Freez no tienen un negocio inde-pendientemente establecido. La prueba no muestra, como tiene que mostrar, que la desaparición de Tastee Freez o la cancelación de los contratos aquí envueltos no afectaría la seguridad en el empleo de sus arrendatarios y la de los

empleados de éstos. Véase: *Avon Products, Inc.*, ante, págs. 810–811. Concluimos en consecuencia que tanto los arrendatarios de Tastee Freez como los empleados de estos son "empleados" a los fines de la Ley de Seguridad de Empleo y la Ley de Beneficios por Incapacidad.

*Por las razones expuestas se reconsiderará nuestra sentencia anterior y se confirmará la sentencia recurrida.*