RAMÓN NORAT ZAYAS, ALCALDE DE COAMO, demandado y recurrente, *v.* HON. RAFAEL HERNÁNDEZ COLÓN, GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrido.

*Número:* CE-89-563        *Resuelto:* 21 de septiembre de 1992

*José R. Lebrón Velázquez*, abogado del recurrente; *Jorge E. Pérez Díaz, Procurador General*, y *Sylvia A. Cancio Bigas, Procuradora General Auxiliar*, abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El querellado recurrente Ramón Norat Zayas fue electo Alcalde del Municipio de Coamo en los comicios electorales celebrados en noviembre de 1980. Fue reelecto en las elecciones de noviembre de 1984. El 1ro de junio de 1988, el Hon. Rafael Hernández Colón, Gobernador del Estado Libre Asociado de Puerto Rico, presentó una querella en su contra ante la antigua Comisión Estatal para Ventilar Querellas Municipales (Comisión); ello al amparo del Art. 3.04 de la hoy derogada Ley Orgánica de los Municipios de Puerto Rico, Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. ant. sec. 2001 *et seq.*). En la misma, el Gobernador le imputó al referido alcalde cinco (5) cargos consistentes de alegadas actuaciones ilegales que implican conducta inmoral y lesiva a los mejores intereses públicos en el desempeño de sus funciones; conducta alegadamente incurrida por Norat Zayas durante la vigencia de la citada Ley Núm. 146.(¹)

---

(¹) Resulta procedente señalar que la Ley Núm. 146 de 18 de junio de 1980 (21 L.P.R.A. ant. sec. 2001 *et seq.*), que estableció la Comisión Estatal para Ventilar

Mediante carta de fecha 2 de junio de 1988, el Gobernador le notificó al alcalde Norat Zayas la radicación de la querella y la suspensión de empleo y sueldo —efectiva al día siguiente— hasta que los mencionados cargos fuesen ventilados. Luego de "conversaciones" entre ambas partes, el alcalde Norat Zayas presentó su renuncia el 8 de agosto de 1988, a ser efectiva la misma el 31 de agosto de 1988, motivada la misma por "su deseo de restañar las heridas dejadas por el proceso primarista interno del Partido Popular Democrático en Coamo ...". Recurso de *certiorari*, pág. 3. Su renuncia fue aceptada por la Asamblea Municipal de Coamo el 31 de agosto de 1988.

El 2 de septiembre de 1988, el ex alcalde solicitó a la Comisión el archivo y sobreseimiento de la querella. En apoyo de dicha solicitud alegó que había renunciado a su cargo como Alcalde y que la Asamblea Municipal de Coamo había aceptado dicha renuncia; esto es, que como había cesado en sus funciones, la causa de acción en su contra se había tornado académica y que la Comisión carecía de jurisdicción para entender en la querella. Inicialmente, el Gobernador estuvo conforme con la solicitud de archivo de la querella. No obstante esto, el 4 de enero de 1989, el Gobernador solicitó de la Comisión que le diera curso a los procedimientos incoados contra Norat Zayas hasta su resolución final.

La Comisión señaló una vista para dilucidar la cuestión. Luego de celebrada la misma, y de evaluar los memorandos de derecho de ambas partes, la Comisión emitió una

Querellas Municipales fue derogada por la Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4851 *et seq.*). Esta nueva ley estableció la Comisión para Ventilar Querellas Municipales como la sucesora de la Comisión Estatal para Ventilar Querellas Municipales. *El Art. 18.015 de la nueva ley faculta a esta nueva Comisión a "continua[r] todos los procedimientos iniciados por la antecesora y mantendrá control y será responsable de todos los expedientes, propiedad, cuentas y documentos de la misma".* (Énfasis suplido.) 1911 Leyes de Puerto Rico 664.

Procede enfatizar, en adición, que las secciones de la derogada Ley Núm. 146, ante, bajo las cuales actuó la antigua Comisión, *fueron incorporadas en forma idéntica a la nueva Ley Núm. 81 de 1991, ante, por lo que su interpretación es la misma.*

resolución declarando sin lugar la moción de archivo y sobreseimiento radicada por el ex alcalde. Resolvió que dicho organismo tenía jurisdicción en el caso y que no existía un problema de academicidad.

Norat Zayas acudió ante el Tribunal Superior de Puerto Rico, Sala de San Juan, en revisión de la resolución emitida por la Comisión. El tribunal de instancia dictó sentencia denegando la expedición del recurso radicado.

Inconforme, Norat Zayas acudió ante este Tribunal. En apoyo de su petición de *certiorari*, el recurrente le imputa al foro de instancia haber errado al:

> 1) ... resolver que a pesar de haber renunciado el querellado al cargo de Alcalde de Coamo y ser la misma firme y final e irrevocable, todavía la Comisión Estatal para Ventilar Querellas Municipales retiene jurisdicción para decretar *inter alia* su destitución como Alcalde.
> 2) ... no ordenar la celebración de una vista evidenciaria para resolver si la parte querellante está impedida de continuar la prosecución [sic.] de su caso, luego de los acuerdos a que llegó con la parte querellada, a los efectos de que retiraría los cargos formulados a cambio de la renuncia del Alcalde. Recurso de *certiorari*, pág. 6.

Expedimos el recurso solicitado. Resolvemos.

## I

Bajo el primer señalamiento de error, sostiene el recurrente que la renuncia al puesto de alcalde que ocupaba privó de jurisdicción a la Comisión y/o que la misma convirtió el caso en académico. Sostiene el recurrente que la Comisión no tiene jurisdicción para continuar dilucidando la querella, una vez el alcalde querellado renuncia a su cargo, ya que el Art. 5.03 de la Ley Núm. 146 —hoy el Art. 18.007 de la nueva Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4857)— solamente faculta

a la Comisión a destituir, amonestar o exonerar al alcalde mientras ocupe dicha posición. Argumenta el recurrente, que una vez se hace efectiva la renuncia como alcalde, no se pueden poner en vigor los remedios disponibles por la ley, ya que para ello se tendría que invalidar la referida renuncia y se afectarían los actos jurídicos posteriores a la renuncia del recurrente. No le asiste la razón.

◼ Nos encontramos ante un problema de interpretación estatutaria en donde resulta procedente "auscultar, averiguar, y precisar, determinar cuál ha sido la voluntad legislativa ...". R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1981, pág. 241. Es preciso examinar en forma integral y armónica las disposiciones de la ley, "tomando en consideración los fines que persigue y en forma tal que la interpretación se ajuste al 'fundamento racional o fin esencial de la ley' y a la política pública que la inspira". *Esso Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 785 (1968). Véase *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816, 820 (1986).

◼ La antigua Comisión Estatal para Ventilar Querellas Municipales *fue creada específicamente para entender en los procedimientos disciplinarios de los Alcaldes.*([2]) Véanse: *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 726 (1982); *Rodríguez Rivera, Alcalde v. Comisión*, 84 D.P.R. 68 (1961). *Su propósito primordial es evitar lesiones al interés público.* Los remedios a concederse por la Comisión van dirigidos al mejoramiento del servicio público y a "proteger al municipio contra una administración de los

---

([2]) El hoy derogado Art. 5.01 de la referida ley disponía:

"a) Se crea la Comisión Estatal para Ventilar Querellas Municipales para entender en querellas contra el Alcalde formuladas por el Gobernador de Puerto Rico, la Asamblea Municipal o cualquier ciudadano." 21 L.P.R.A. sec. 3101 (Sup. 1981).

En cuanto a la Ley Núm. 81, ante, véase el Art. 18.001 de dicha ley, 21 L.P.R.A. sec. 4851.

fondos y bienes públicos fraudulenta, corrupta e irresponsable y del abuso de los poderes inherentes al cargo de Alcalde". *Vélez Ramírez v. Romero Barceló*, ante, pág. 735.

Un análisis integral de las disposiciones de la Ley Orgánica de los Municipios —tanto de la Ley Núm. 146, ante, como de la Ley Núm. 81, ante— nos lleva a concluir que la intención del legislador no fue limitar la jurisdicción de la Comisión a dilucidar una querella mientras el Alcalde ocupa dicho cargo. Esto claramente se desprende de las consecuencias sustanciales que disponía la Ley Núm. 146, ante —y que hoy, igualmente, dispone la Ley Núm. 81, ante— al implementar los remedios disciplinarios contra un alcalde. La referida ley prohibía que una persona que haya sido destituida anteriormente de un cargo o empleo por conducta impropia en el desempeño de sus funciones pueda aspirar a ocupar nuevamente el puesto de Alcalde. Véanse: Art. 3.01 de la hoy derogada Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3001;[3] *P.P.D. v. Planadeball Poggy*, 121 D.P.R. 570

---

[3] El Art. 3.01 de la Ley Núm. 146 (21 L.P.R.A. sec. 3001) (Sup. 1981), disponía lo siguiente:

"(a) Todo aspirante a Alcalde deberá, a la fecha de la elección, cumplir con las siguientes condiciones:

. . . . . . .

"(5) No haber sido convicto de delito grave o de aquellos menos graves que impliquen depravación moral.

"(6) *No haber sido destituido de cargo o empleo por conducta impropia en el desempeño de sus funciones.*" (Énfasis suplido.)

La propia Ley Núm. 146, ante, delimitaba los cargos que se podían presentar contra el Alcalde. Así, en su Art. 3.04 disponía que sólamente se podrá destituir al Alcalde por las siguientes causas:

"(1) Haber sido convicto de un delito grave..

"(2) Haber sido convicto de delito menos grave que implique depravación moral.

"(3) Conducta inmoral.

"(4) Actuaciones ilegales que impliquen abandono, negligencia inexcusable *o conducta lesiva a los mejores intereses públicos en el desempeño de sus funciones.*" (Énfasis suplido.) 21 L.P.R.A. sec. 3004 (Sup. 1981).

En cuanto a la Ley Núm. 81 de 1991, véanse los Arts. 3.001 y 3.008 de la misma, 21 L.P.R.A. secs. 4101 y 4108.

(1988). La destitución también impide que dicho funcionario ocupe otros cargos públicos, así como también que reciba los emolumentos dejados de percibir desde la fecha en que fue suspendido de empleo y sueldo, y otros beneficios marginales por servicios prestados al Municipio, a los que tendría derecho de resultar exonerado el Alcalde. Véase *Vélez Ramírez v. Romero Barceló*, ante, pág. 740.

■ Por otro lado, el archivo de una querella contra un alcalde por el mero hecho de éste haber renunciado tendría el efecto práctico de "exonerar" a éste, conservando dicha persona el derecho a recibir el pago retroactivo de los emolumentos dejados de percibir desde que fue suspendido hasta la fecha de su renuncia. Esto se debe a que la suspensión, y los efectos que ella acarrea, *están condicionadas* a que ocurra finalmente una destitución válida. Véanse: *Ramírez v. Municipio*, 72 D.P.R. 364, 368 (1951); *Vélez Ramírez v. Romero Barceló*, ante, pág. 739. Asimismo, dicha persona tendría derecho a recibir beneficios marginales, tales como los beneficios del Sistema de Retiro de Empleados del Gobierno, los cuales por disposición expresa de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. secs. 761–788, le están vedados a los alcaldes que han sido separados de sus cargos por justa causa.[4]

■ Lo anteriormente expuesto nos lleva a concluir que *no* es correcta la posición del recurrente a los efectos de que la Comisión no puede poner en vigor los remedios que la Ley Núm. 146, ante, autorizaba, una vez la persona querellada haya renunciado a su cargo. El interés del legislador no se limita a evitar que un alcalde continúe en su puesto. *Existe un interés ulterior de vital importancia para la administración pública que consiste en impedir que el*

---

[4] La mencionada ley dispone que:

"No se considerarán incluidos en la clasificación anterior aquellos alcaldes que durante el término de sus servicios al Estado Libre Asociado como tales, hayan sido separados de sus cargos por justa causa." 3 L.P.R.A. sec. 766B.

*alcalde destituido pueda en un futuro ocupar dicho cargo nuevamente.* Hay que tener presente que el "alcalde realiza en Puerto Rico una importante y delicada misión. Suya es la responsabilidad de dirigir y orientar la cosa pública dentro de *normas de estricto orden y rectitud intachable*". (Énfasis suplido.) *Rodríguez Rivera, Alcalde v. Comisión,* ante, pág. 76. Por tal razón, es la Comisión, mediante su autoridad disciplinaria, la encomendada por ley a salvaguardar y proteger estos principios.

Para cumplir con las disposiciones de ley, dirigidas a proteger el interés público, *es preciso que la Comisión tenga poder para continuar con los procedimientos disciplinarios aun cuando el alcalde renuncie a su cargo.* Una vez se diluciden los cargos, y la Comisión concluya que éstos fueron probados, *entonces la misma podrá ordenar la destitución del alcalde, efectiva a la fecha de la suspensión decretada por el Gobernador del Estado Libre Asociado de Puerto Rico.*

Este Tribunal ha expresado reiteradamente que la mejor manera de servir la ley es interpretándola de tal forma que se realice su idea animadora, *P.P.D. v. Ferré, Gobernador,* 98 D.P.R. 338, 429 (1970), y que una interpretación de una ley que conduzca a una conclusión absurda deber ser rechazada. Véanse: *Orta v. Registrador,* 60 D.P.R. 789, 794 (1942) (en reconsideración); *P.R. Tel. Co. v. Martínez,* 114 D.P.R. 328 (1983). Una interpretación sensata, lógica y razonable de la Ley Orgánica de los Municipios *nos lleva a concluir que a un alcalde contra quien se han presentado cargos graves por conducta impropia en el desempeño de sus funciones, no puede permitírsele que evada, mediante una renuncia a su puesto, las consecuencias colaterales sustanciales que la propia ley dispone en caso de que el fallo de la Comisión le sea adverso.* Nos parece meridianamente claro que la intención del legislador fue conferir jurisdicción a la Comisión para entender en

una querella contra un Alcalde, *aun después que éste ha cesado en sus funciones*, si la querella se presentó mientras dicho funcionario era alcalde. *Una interpretación contraria atentaría contra el espíritu de la ley municipal al permitir que se vulnere la autoridad disciplinaria de la Comisión en detrimento de las mejores normas de administración pública.*

La interpretación que hoy adoptamos es cónsona con la realizada por la propia Comisión. Sabido es que "las interpretaciones que las agencias hagan de sus propias facultades merecen gran deferencia si son razonables y compatibles con su propósito legislativo. Véase *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992), y casos allí citados.

Por otro lado, somos del criterio que *tampoco le asiste la razón a Norat Zayas en su argumento de que su renuncia tornó el caso en académico.* El concepto de academicidad fue atinadamente definido por este Tribunal en *E.L.A. v. Aguayo*, 80 D.P.R. 552, 584 (1958). Allí expresamos que:

> Un caso académico ... "es uno en que se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón *no podrá tener efectos prácticos sobre una controversia existente* ...". (Énfasis suplido.)

Se han elaborado una serie de excepciones a la aplicación de la doctrina de academicidad entre las cuales se encuentran *"los casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales".* (Énfasis suplido.) Véanse: *El Vocero v. Junta de Planificación*, 121 D.P.R. 115, 124 (1988); *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991); R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, 1ra ed., San Juan, Ed. C. Abo. P.R., 1988, Vol. 1, pág. 122; L.H.

Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, pág. 91.

En el caso ante nos, la renuncia del recurrente después de radicados los cargos en su contra no convierte el mismo en académico. Ello así porque, según señaláramos anteriormente, existen· consecuencias ulteriores que dependen de la adjudicación que del caso se haga en los méritos. El Estado tiene un interés pecuniario en el resultado del caso, ya que de no ser efectivamente destituido, éste tiene derecho a cobrar los emolumentos dejados de percibir desde la suspensión hasta su renuncia. Véase *Ramírez v. Municipio*, ante. Esta razón por sí sola evita que el caso sea académico.([5])

Por otro lado, si se prueban los cargos imputádoles, se podrá ordenar una destitución efectiva a la fecha de suspensión del cargo, *la cual impediría que dicha persona se postulara en un futuro para alcalde*, ello a tenor con lo dispuesto por el antiguo Art. 3.01 de la hoy derogada Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. ant. sec. 3001.([6]) Cuando la ley impone sanciones adicionales a la mera destitución, los procedimientos pueden continuar a pesar de la renuncia de la persona. *In re Peoples*, 250 S.E.2d 890 (1978); *In re Sherill*, 403 S.E.2d 255 (1991); *State v. Rose*, 86 P. 296, *appeal dismissed*, 203 U.S. 580 (1906); *Hawkins v. Voisine*, 290 N.W. 827 (1940). Véase, además, 63 *Am Juris 2d* Sec. 170 (1984) (*Public Officers and Employees*).

Estas consecuencias colaterales, derivadas de una determinación de destitución o exoneración, mantienen viva la controversia y no hacen el caso académico, aunque el

---

([5]) Véase *Powell v. McCormack*, 395 U.S. 486, 499 (1968), en donde la acción instada por el congresista Powell para cuestionar su exclusión de la Cámara de Representantes no era académica por no ocupar dicho cargo al momento·de revisión del Tribunal Supremo. Ello por razón de que permanecía viva la controversia de su derecho a recibir salario no percibido durante la exclusión del cargo.

([6]) Hoy, bajo la citada Ley Núm. 81, el Art. 3.001, ante.

remedio principal de remover físicamente a la persona de su cargo sea académico.([7])

## II

Mediante su segundo señalamiento de error, Norat Zayas sostiene que las conversaciones que sostuvo con el Gobernador —en las cuales, alegadamente, éste se comprometió a retirar los cargos a cambio de que él presentara su renuncia al puesto de alcalde— tienen el efecto de impedir que la Comisión continúe con la querella. No erró el foro de instancia al descartar, por inmeritorio, dicho argumento y al negarse a celebrar una vista evidenciaria al respecto.

El propio Norat Zayas, en el recurso que radicara, admite que los alegados acercamientos hechos por el Gobernador fueron "en su capacidad de Presidente del Partido Popular Democrático ... en bien de los intereses de su colectividad política". Indica, además, el recurrente que su renuncia "[fue] movid[a] por su deseo de restañar las heridas dejadas por el proceso primarista interno del Partido Popular Democrático en Coamo ...". Recurso de *certiorari*, pág. 3.

Aceptando, a los fines de la argumentación, que efectivamente hubo un acuerdo a los efectos antes mencionados entre el Gobernador y Norat Zayas, *el mismo fue un acuerdo político que no obliga a la Comisión ni afecta su facultad jurisdiccional.* Ello así por cuanto, si es que hubo el acuerdo a que hace referencia Norat Zayas, el mismo fue entre él y el Lcdo. Rafael Hernández Colón *en su capacidad de presidente del partido político al cual ambos pertenecen*; dicho acuerdo, ciertamente y por la propia admisión del recurrente, no fue hecho por el licenciado Hernández

---

([7]) A esos efectos, véase *Ellis v. Railways Clerks*, 466 U.S. 435, 442 (1984), en donde se establece: "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."

Colón en su capacidad de Gobernador del Estado Libre Asociado de Puerto Rico. El mismo, repetimos, en nada afecta el poder o facultad de la Comisión para dilucidar los hechos que fueron imputados a Norat Zayas. *Cf. In re Pagán Ayala*, 117 D.P.R. 180, 187 (1986). Por otro lado, el Gobernador de Puerto Rico, en su capacidad como tal, *nunca* retiró los cargos que había radicado contra Norat Zayas.

Procede, en consecuencia, que *se dicte sentencia confirmatoria de la emitida en el presente caso por el Tribunal Superior de Puerto Rico, Sala de San Juan, devolviéndose el caso a dicho foro para que proceda, a su vez, a devolver el mismo al foro administrativo; esto es, a la nueva Comisión para Ventilar Querellas Municipales creada por la Ley Núm. 81 de 30 de agosto de 1991.*

El Juez Asociado Señor Hernández Denton emitió una opinión de conformidad y concurrente. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión de conformidad y concurrente del Juez Asociado Señor Hernández Denton.

Suscribo la opinión del Tribunal por entender que un análisis integral de los textos de las leyes de los municipios y de las diferentes disposiciones que están relacionadas con la controversia de autos revela que la intención legislativa fue que la Comisión para Ventilar Querellas Municipales (en adelante la Comisión) retenga jurisdicción sobre una querella presentada contra un alcalde que renuncia a su posición. Conforme tanto con el Art. 5.03 de la antigua Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. ant. sec. 3103, como con el Art. 18.007 de la Ley de Municipios Autónomos del Estado Libre Asociado de

Puerto Rico de 1991, Ley Núm. 81 de 30 de agosto de 1991 (21 L.P.R.A. sec. 4857), la Comisión puede, luego de ventilar los cargos, disponer del caso en varias maneras.

Aunque en el caso de autos han transcurrido cuatro (4) años desde que la Asamblea Municipal de Coamo aceptó la renuncia del Sr. Ramón Norat Zayas, y que en 1988 el Hon. Carlos Luis Torres fue electo Alcalde de ese Municipio, la Comisión conserva jurisdicción para determinar la validez de la suspensión de empleo y sueldo que le fue impuesta por el Gobernador. Si la Comisión invalida esta suspensión, podría ordenar que se le pagara al ex alcalde Norat Zayas el sueldo y los otros beneficios que dejó de percibir entre el 2 de junio y el 31 de agosto de 1988, fecha en que la Asamblea Municipal aceptó su renuncia. Pero si la Comisión convalida la decisión del Gobernador Hon. Rafael Hernández Colón, el Señor Norat Zayas no tendría derecho a los haberes dejados de percibir durante esos tres (3) meses.

Por otro lado, si se confirma su destitución, en virtud de lo dispuesto en el Art. 3.001 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4101), él estaría impedido de postularse en otra ocasión para la alcaldía de cualquier municipio. Como acertadamente señala la Opinión del Tribunal, "[e]xiste un interés ulterior de vital importancia para la administración pública que consiste en impedir que el alcalde destituido pueda en un futuro ocupar dicho cargo nuevamente". (Énfasis suprimido.) Opinión mayoritaria, págs. 623–624. Por la naturaleza de las funciones de los alcaldes en nuestro ordenamiento gubernamental, y en vista de los poderes recientemente otorgados a los municipios por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, el Estado tiene que evitar que una persona corrupta, inmoral o negligente en sus obligaciones públicas pueda postularse nuevamente para la posición de alcalde.

Al reconocerle jurisdicción a la Comisión en el caso de autos, evitamos que un alcalde suspendido de empleo y sueldo por el Gobernador pueda privar al foro administrativo de su poder de adjudicar los cargos imputados renunciando a la posición tan pronto se le formulan cargos. Como ·de ordinario la mayoría de los asambleístas pertenecen al mismo partido político que el Alcalde, esta decisión impedirá que se pongan de acuerdo para aceptarle la renuncia a un alcalde suspendido y eviten, de este modo, que se ventilen los cargos. Así nos aseguramos de que los funcionarios electos cumplan cabalmente con sus responsabilidades ante el país y ante la ley.