# 2009 DTA 97

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL I**

ESCUELA DE ARTES PLÁSTICAS
Recurrente

v.

NEGOCIADO DE SEGURIDAD DE EMPLEO (NSE)
Recurrido

Núm. KLRA-2007-00572

San Juan, Puerto Rico, a 30 de junio de 2009

Panel integrado por su Presidente, el Juez Ramírez Nazario,
y los Jueces Piñero González y Morales Rodríguez

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece la Escuela de Artes Plásticas (EAP) para solicitar la revocación de la Resolución emitida el 18 de mayo de 2007 y notificada el 21 de mayo de igual año por el Departamento del Trabajo y Recursos Humanos. Mediante la referida Resolución se confirmó la determinación del Negociado de Seguridad de Empleo que consideró que los servicios prestados por los profesores por contrato de la EAP constituyen empleo cubierto por la Ley Núm. 74 de 21 de junio de 1956 y la Ley Núm. 139 de 26 de junio de 1968.

Considerados los escritos de las partes, así como los documentos que los acompañan a la luz del derecho aplicable, resolvemos confirmar la Resolución recurrida.

**I**

La EAP es una institución de educación superior dedicada al desarrollo de las artes plásticas. Los cursos y

programas académicos que ofrece los imparte mediante profesores regulares y por contrato. Los señores Roberto Díaz Cosme, Edwin Merced Amalbert, Ada R. Rivera Negrón y Natalia Aponte Nadal han fungido como profesores por contrato en la EAP.

Los referidos contratos disponen como responsabilidades de estos profesores, las siguientes:

"1. Responderá directamente a la Directora de Asuntos Académicos de **LA ESCUELA**, quien será su supervisor inmediato, conjuntamente con el Director del Departamento.

2. Asistirá con puntualidad y regularidad a reuniones del Departamento y otras actividades afines a la docencia, incluyendo las reuniones del Claustro y la Graduación. El profesor ofrecerá un mínimo de una (1) hora de oficina semanal por cada curso de tres créditos, tiempo que también podrá dedicar a reuniones ordinarias y extraordinarias originadas por la Institución.

3. Asistirá a clases con puntualidad y cumplirá con la totalidad del horario del curso.

4. Firmará una hoja de asistencia...

5. En el caso de ausencias voluntarias o involuntarias, tendrá que reponer, tanto en tiempo como en contenido, la parte correspondiente a la clase o clases omitidas por motivo de las ausencias, mediante un acuerdo con la Directora de **LA ESCUELA.**

6. Asistirá con puntualidad y regularidad a las reuniones oficiales convocadas por la Directora de **LA ESCUELA** para los fines que se consideren necesarios y que estén relacionados con **LA ESCUELA.**

7. Preparará una guía y un silabario de cada curso que ofrezca al comienzo de cada semestre académico... Estos documentos tendrá que entregarlos con anticipación al comienzo de cada curso y deberán discutirse con el Director del Departamento y la Oficina de Asuntos Académicos.

8. Comunicará y explicará con claridad y sencillez el contenido de los cursos ...

9. Llevará un registro diario de asistencia y evaluaciones periódicas para sus estudiantes, y conjuntamente con la Dirección de **LA ESCUELA** establecerá la disciplina que debe regir en su área de trabajo o salón de clases.
....

10. Cumplirá con el Manual de Procedimientos del Area de Registraduría y las Normas Generales establecidas por la Dirección de **LA ESCUELA.**

11. Cooperará con la Rectora de **LA ESCUELA,** con sus compañeros profesores en aquellas situaciones que puedan afectar a toda la comunidad estudiantil y académica...

12. Mantendrá su área de trabajo o salón de clases en orden, limpio y en condiciones... Será responsable del equipo asignado para sus labores.

13. Preparará anticipación [sic] las requisiciones de materiales y equipo necesarios para la enseñanza.

14. Consultará con la Directora de **LA ESCUELA** sobre cualquier cambio en su plan de trabajo o la alteración de algunos de los acuerdos estipulados en este contrato."

El 24 de agosto de 2006, el Negociado de Seguridad de Empleo notificó a la EAP que los servicios

prestados por los profesores aludidos estaban cubiertos por la *Ley de Seguridad de Empleo, Ley Núm. 74 supra*. Por tanto, ello significa que la EAP debe rembolsar al Departamento del Trabajo el dinero pagado a los profesores por concepto de beneficio por desempleo.

En desacuerdo, el 20 de septiembre de 2006, la EAP apeló dicha determinación ante el Secretario del Trabajo. Expuso que los profesores no eran empleados para fines de la citada ley, sino que prestaban su labor mediante contratos de servicios profesionales. El 17 de enero de 2007 se celebró la vista correspondiente. Comparecieron el Decano y la Rectora de la EAP con su representación legal. Además estuvieron presente por parte del Negociado de Seguridad de Empleo, su Oficial de Determinaciones de Contribuciones Patronales y su representación legal. Los profesores en cuestión acudieron a la vista como testigos a solicitud de la EAP. Las partes presentaron prueba testifical y documental.

Tras un extenso análisis del derecho aplicado a las circunstancias del caso ante su consideración, el Departamento del Trabajo confirmó la determinación del Negociado de Seguridad de Empleo.

## II
Inconforme, la EAP acude ante este Tribunal, mediante recurso de revisión judicial y señala como errores:

"Incide el Honorable Departamento del Trabajo al determinar que el servicio prestado por los profesores constituye empleo bajo las disposiciones de la Ley de Seguridad de Empleo de Puerto Rico y la sección 2(j)(5) de la Ley de Beneficios por Incapacidad no Ocupacional.

Incidió el Honorable Departamento del Trabajo al determinar que la EAP no cumple con los incisos (A), (B) y (C) de la sección 2(K) (5) de Ley de Seguridad de Empleo.

Incidió el Honorable Departamento del Trabajo al determinar que la apelante no derrotó la presunción que establece la Ley de que todo servicio prestado constituye empleo.

Incidió el Honorable Departamento del Trabajo al determinar que a los profesores reclamantes les ampara el precepto de ley sobre la protección contra la inseguridad económica.

Incidió el Honorable Departamento del Trabajo al apreciar la prueba presentada.

Incidió el Honorable Departamento del Trabajo al determinar que a [sic] los profesores reclamantes son acreedores de [sic] beneficios por desempleo."

## III
Por virtud de la Ley de Seguridad de Empleo de Puerto Rico, Ley Núm. 74, *supra*, 29 L.P.R.A. sec. 701 *et seq.*, el Negociado de Seguridad de Empleo ha sido creado para poner en vigor un estatuto cuyo objetivo es "promover la seguridad de empleos al facilitar las oportunidades de trabajo por medio del mantenimiento de un sistema de oficinas públicas de empleo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas." Sección 1 de la Ley Núm. 74, *supra*, 29 L.P.R.A. sec. 701; *Castillo v. Depto. del Trabajo*, 152 D.P.R. 91, 98 (2000).

Para lograr sus objetivos es que la Ley Núm. 74, *supra*, establece un fondo de desempleo, totalmente separado de los fondos del Estado Libre Asociado de Puerto Rico, que se nutre de las contribuciones que periódicamente pagan los patronos conforme a sus disposiciones. Sección 10 de la Ley Núm. 74, 29 L.P.R.A. sec. 710; *Castillo v. Depto. del Trabajo, supra*. Conforme a esta ley, corresponde al Secretario del Trabajo por conducto de todas las oficinas que componen el Negociado de Seguridad de Empleo, poner en vigor la misma. Es función principal de dicho funcionario manejar y administrar el fondo de desempleo, conforme a esta ley,

con el objetivo primordial de proteger a la clase trabajadora de la inseguridad económica y del riesgo del desempleo. *Castillo v. Depto. del Trabajo, supra.*

De las claras disposiciones de este estatuto remedial o reparador se desprende que la elegibilidad para recibir los beneficios por desempleo corresponde exclusivamente a personas desempleadas. Véase Sección 4 de la Ley Núm. 74, *supra*, 29 L.P.R.A. 704. Esta ley va dirigida a garantizar sus beneficios a aquel trabajador que estando empleado, al quedar desempleado cumple con los siguientes requisitos: (1) Tiene que reunir todas las condiciones de elegibilidad establecidas en la sección 4(a) de la Ley Núm. 74, *supra*, 29 L.P.R.A. sec. 704(a); (2) Debe haber abandonado su empleo involuntariamente y con justa causa; y (3) Debe estar apto y disponible para regresar a trabajar.

En lo pertinente al caso de autos, en la sección 2(k)(5) de la Ley Núm. 74, *supra*, 29 L.P.R.A. 702(k)(5), se define "empleo" como:

"El servicio prestado por una persona será considerado como empleo bajo esta ley independientemente de si existe o no una relación obrero-patronal, a menos y hasta que se demuestre a satisfacción del Secretario que:

A. En relación con la prestación de su servicio, tal persona ha estado y continuará actuando sin sujeción a mando o supervisión, tanto como cuestión de hecho como bajo su contrato de servicios; y

B. tal servicio es prestado, bien fuera del curso usual del negocio para el cual se trabaja o fuera de todos los sitios de negocio de la empresa para la cual se trabaja; y

C. dicha persona está usualmente ocupada en algún trabajo, profesión o negocio independientemente establecido de la misma naturaleza de aquel comprendido en el servicio prestado.

Esta misma definición se reproduce en la Ley de Beneficios por Incapacidad." 11 L.P.R.A. sec. 202(j)(5).

El Tribunal Supremo ha resuelto que el término empleo tiene bajo la Ley de Seguridad de Empleo una configuración propia cuyo propósito es precisamente obviar las dificultades y el curso azaroso que ha seguido la jurisprudencia al considerar la diversidad de criterios que delimitan el ámbito de esta relación. *Avon Products, Inc. v. Srio. del Trabajo*, 105 D.P.R. 803 (1977). Debemos tener presente que el Tribunal Supremo ha sostenido que la definición de "empleo," formulada en la Ley Núm. 74, *supra*, "establece con meridiana claridad [sic] la presunción de que todo servicio prestado por una persona constituye empleo aun cuando no exista una relación de empleo tradicional u ortodoxa"; por lo que es el propósito legislativo "que no se excluya de la protección de la ley a ninguna persona, aun las que pudieran considerarse contratistas independientes, de acuerdo con las restricciones técnicas tradicionales." *Avon Products, Inc. v. Srio. del Trabajo, supra.* La protección contra la inseguridad económica, contra el riesgo de desempleo, es, en consecuencia, el factor clave para precisar el significado de los criterios que estipula la legislación que nos ocupa. Conceptos derivados de otros usos de la voz "empleo" no vienen al caso. *Tastee Freez v. Negociado de Seguridad de Empleo,* 111 D.P.R. 809 (1981).

Es a la luz de este trasfondo que deben examinarse los criterios "ABC" para resolver si en este caso se cumplen sus requisitos. Los tres requisitos tienen que cumplirse para excluir al empleado de esa categoría. *Revlon Serv., Inc v. Employment Ditksion,* 567 P.2d 1072, 1074 (1977). La carga de la prueba recae sobre quien alega que se satisfacen los tres criterios y que el alegado empleo no lo es. *Sears Roebuck & Co. v. Dept. of Industr., Labor and Human Relations, 280* N.W.2d 240 (1979). Cada pleito de esta naturaleza exigirá análisis independiente. *Tastee Freez v. Negociado de Seguridad de Empleo, supra.*

Reiteradamente nuestro Tribunal Supremo ha pasado juicio sobre la figura del contratista independiente en el ámbito laboral. Se ha sostenido que para determinar si existe la relación de patrono o empleado o de principal

y contratista independiente, "la caracterización o denominación que hagan las partes respecto a la naturaleza de sus relaciones, no es decisiva...". *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R. 754, 766 (2000); *Nazario v. Vélez*, 97 D.P.R. 458, 463 (1969). Esta normativa significa que lo que disponga el contrato laboral no es determinante ni decisivo al momento de definir la verdadera relación entre las partes.

Para determinar si estamos ante un contratista independiente, es preciso examinar los hechos que originaron la controversia tomando en cuenta, a su vez, una serie de factores señalados por nuestra jurisprudencia. Esto se debe a que, por lo general, en este tipo de controversias se reúnen rasgos característicos tanto de empleado como de contratista independiente. En consecuencia, en raras ocasiones encontramos situaciones en las que exista una tajante distinción entre ambos." *S.L.G. Hernández-Beltrán v. TOLIC, supra*, págs. 576-577, citando a *Fernández v. A.T.P.R.*, 104 D.P.R. 464, 465 (1975); *Nazario v. González*, 101 D.P.R. 569, 572 (1973); *Pérez v. Hato Rey Bldg. Co.*, 100 D.P.R. 882, 888 (1972); *Landrón v. J.R.T.*, 87 D.P.R. 94, 102 (1963).

Debe atenderse principalmente al factor de realidad económica, cuando el recurrir a las clasificaciones técnicas que puedan prevalecer en otras áreas del Derecho, conduzca a una solución injusta al interpretar estatutos reparadores como la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. sec. 701 y ss., ...". *S.L. G. Hernández-Beltrán v. TOLIC, supra*, citando a *Nazario v. Vélez, supra*. El factor de realidad económica "... ayuda a lograr protección para un mayor número de empleados y, en casos específicos, a lograr soluciones compatibles con los propósitos de los estatutos reparadores...; el factor de realidad económica requiere la consideración, a su vez, de varios criterios, como el grado de control, las oportunidades de pérdida e inversión en facilidades, pero que ninguno de éstos es, por sí sólo, determinante." *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 767, citando a *Avon Products, Inc. v. Srio. del Trabajo, supra*.

El grado de control que se pueda reservar el principal sobre la ejecución del trabajo es el criterio rector para dilucidar si la relación laboral ... es de empleado y patrono o de principal y contratista independiente ...". *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768, citando a *Mariani v. Christy*, 73 D.P.R. 782 (1952). Para determinar el tipo de relación, si se trata de patrono y empleado o de principal y contratista independiente, "... no existe una regla absoluta, sino que depende de la importancia que se le atribuya a cada uno de los factores." *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768, citando a *Nazario v. Vélez, supra*.

De suma importancia es tomar en cuenta ciertos factores para dilucidar si una persona se desempeña ciertamente, y no aparentemente, como un contratista independiente; entre estos factores están los siguientes: "(i) la naturaleza, extensión y grado de control por parte del principal; (ii) el grado de iniciativa o juicio que despliega el empleado; (iii) la propiedad del equipo; (iv) la facultad de emplear y el derecho a despedir; (v) la forma de compensación; (vi) la oportunidad de beneficio y el riesgo de pérdida; y (vii) la retención de contribuciones." *S.L.G. Hernández-Beltrán v. TOLIC, supra*, pág. 768, citando a *Martínez Pérez v. U.C.B.*, 143 D.P.R. 554 (1997); *Bengochea v. Ruiz Torres*, 103 D.P.R. 68 (1974); *Admor., F.S.E. v. Comisión Industrial*, 101 D.P.R. 6, 8 (1973); *Nazario v. Vélez, supra*.

Por otro lado, reiteramos la normativa de que las conclusiones e interpretaciones de los organismos y agencias administrativas especializadas merecen gran consideración y respeto de los tribunales. *M&V Orthodontics v. Negociado de Seguridad de Empleo*, 115 D.P.R. 183, 188 (1984). La revisión judicial debe limitarse a determinar si actuaron arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituya un abuso de discreción. *Franco Dominicci v. Departamento de Educación*, 148 D.P.R. 703 (1999). Sobre este particular, en *South P.R. Sugar Co. v. Junta*, 82 D.P.R. 847 (1961), el Tribunal Supremo expresó:

"Es norma reiterada de este Tribunal la de merecerle 'gran consideración y respeto' a las conclusiones e interpretaciones de los organismos administrativos especializados. *Colonos de Caña de Santa Juana, Inc. v. Junta Azucarera*, 77 D.P.R. 392, 396 (1954), y sentencias allí citadas. Cobra más énfasis esa actitud cuando revisamos los fallos de ciertos organismos que tienen a su cargo la reglamentación de procesos técnicos,

sociales o económicos. Pero la citada norma no es por sí sola suficiente para enmarcar las relaciones que deben existir entre administradores y jueces en la difícil y a ratos angustiosa tarea de la revisión judicial."

Consono con ello, se ha repetidamente resuelto que las interpretaciones que hacen las agencias de sus propios reglamentos y leyes creadoras merecen gran deferencia si son razonables y consistentes con su propósito legislativo, y cuando tal interpretación del estatuto no afecte sustancialmente derechos fundamentales. *Gobernador v. Alcalde de Coamo*, 131 D.P.R. 614, 621 (1992).

## IV

Atenderemos en conjunto los errores señalado tal como fueron discutidos por las partes. Éstos se circunscriben básicamente a cuestionar la determinación de que los servicios de los profesores aludidos satisfacen la definición de empleo para fines de la Ley Núm. 74, *supra,* y la Ley de Beneficios por Incapacidad. 11 L.P.R.A. sec. 202(j)(5).

Como vimos, la Ley Núm. 74, *supra,* y la Ley de Beneficios por Incapacidad. 11 L.P.R.A. sec. 202(j)(5), esbozan los criterios que tienen que cumplirse para excluir a una persona de la categoría de "empleado". *Avon Products v. Srio. del Trabajo, supra.* El Tribunal Supremo ha sostenido que la definición de "empleo," formulada en la Ley Núm. 74, *supra*, establece la presunción de que todo servicio prestado por una persona constituye empleo. Así, el peso de la prueba recae sobre quien alega que se satisfacen los tres criterios y que el alegado "empleado" no lo es. *Id.* Es decir, la EAP debía derrotar tal presunción al demostrar que se cumplían los tres criterios. **El incumplimiento de uno sólo de los tres criterios es suficiente para considerar "empleado" al trabajador concernido**, a los fines de la legislación que venimos analizando. *Id.* Veamos si la EAP logró rebatir la presunción.

Para cumplir con el criterio "A", EAP tenía que probar que no cuenta con potestad para dirigir la conducta de los profesores. *Tastee Freez de P.R. v. Negociado de Seguridad, supra* . "La mera posibilidad de control futuro basta para convertir al agente en "empleado". *Id.* En este caso, surge claramente de los contratos entre los profesores y la EAP, que éstos reciben directrices sobre su trabajo. El patrono, EAP, les exige el cumplimiento con múltiples obligaciones y ciertas especificaciones. Desde la primera cláusula del contrato se establece que los profesores responderán "…directamente a la Directora de Asuntos Académicos de **LA ESCUELA**, quien será su supervisor inmediato, conjuntamente con el Director del Departamento." Así también, vemos que la EAP fija su horario, les exige asistir a determinadas reuniones, cumplir horas de oficina. Se les provee un equipo para llevar a cabo sus funciones, por el cual deben responder. De igual forma, surge que la EAP le requería cumplir con el Manual de Procedimientos del Área de Registraduría y las Normas Generales establecidas por la Dirección de la EAP. La EAP arguye que los profesores tienen libertad de cátedra; sin embargo, vimos que los silabarios debían ser sometidos a la consideración de la EAP, y que cualquier cambio en su plan de trabajo tenía que ser consultado con la Directora de la EAP.

Estas circunstancias particulares de la relación entre los profesores y la EAP ejemplifican el grado de control o mando que existe sobre éstos por la EAP. Si bien los profesores tienen alguna flexibilidad en cuanto a sus métodos de enseñanza, de las cláusulas y condiciones del contrato surge claramente que es la EAP quien aprueba y toma las determinaciones finales. Por lo cual, consideramos que no se satisface el criterio "A". El incumplimiento con este criterio es suficiente para considerar "empleados" a los profesores.

No obstante, continuaremos examinando los restantes criterios, pues entendemos que resulta más patente aún el hecho de que la presunción que los favorece no pudo ser derrotada. *Avon Products, Inc. v. Srio. del Trabajo, supra.*

Para satisfacer el criterio "B" se requiere que el servicio sea prestado fuera del curso usual del negocio para el cual se trabaja, o fuera de todos los sitios de negocios de la empresa. El trabajo que desempeñan los

profesores, definitivamente, es parte del curso usual de la EAP. Su labor es parte esencial e indispensable a la función de la EAP de ofrecer cursos de arte de educación superior. Así también, al contratar a los profesores, la EAP les provee un lugar de trabajo, a saber, los salones de clase, y pone a su disposición materiales, equipo y las demás facilidades del plantel para impartir sus cursos. Dicha actividad se realiza dentro del curso normal de la institución académica. El hecho que los profesores tengan la discreción de brindar sus cursos en lugares ajenos a la institución, ya sea en museos o galerías, no satisface el criterio bajo consideración. Tal facultad la tienen los demás profesores que no son objeto de esta reclamación, sin que por ello se les considere no empleados. En fin, no es a ello a lo que se refiere el criterio "B". Los cursos fuera del plantel responden a actividades cónsonas con la filosofía de la experiencia académica que se busca ofrecer por la EAP. Por tanto, dichos lugares se convierten en extensiones del lugar de operaciones de la EAP. Por ello, entendemos que tampoco se cumple con el requisito "B" de las disposiciones pertinentes.

En cuanto al criterio "C", éste exige que la persona esté usualmente ocupada en algún trabajo, profesión o negocio, independientemente establecido, de la misma naturaleza de aquel comprendido en el servicio prestado. Por un lado, vimos que una de las profesoras, incluso fue Subdirectora de Departamento, con múltiples contratos con la EAP por varios años. Ello difícilmente la descalificaría como empleada de la EAP. Otros de los profesores han trabajado en labores no relacionadas a la naturaleza de sus servicios para EAP. Según surge de la Resolución recurrida, estos profesores a lo sumo mantuvieron trabajos parciales, sin regularidad o estabilidad, para suplementar su sustento. No se dedican a ellos o se ocupan en ellos, usual y generalmente, como requiere la ley. Por tanto, dependen principal y ordinariamente para su sustento de su trabajo en la EAP.

El Departamento del Trabajo correctamente determinó que la EAP no logró demostrar que los profesores se dedican habitualmente a un negocio o trabajo independiente. En fin, la EAP no demostró para satisfacer este criterio "C", que la cancelación de los contratos que nos ocupan no afectaría la seguridad en el empleo de los profesores, pues se dedican a algún otro trabajo, profesión o negocio independiente.

Concluimos, entonces, que tal como determinó la agencia recurrida, los profesores de la EAP aquí aludidos, son "empleados" a los fines de la Ley de Seguridad de Empleo y la Ley de Beneficios por Incapacidad. Aplicados los criterios recogidos en la sección 2(k)(5) de la Ley Núm. 74, *supra*, y 2(j)(5) de la Ley de Beneficios por Incapacidad, y en la jurisprudencia anteriormente citada, somos de opinión que los profesores son propiamente empleados de la EAP. No albergamos duda de que prestan sus servicios en el curso usual de los negocios de la EAP. De modo que la EAP no puede evitar el reembolso al Departamento del Trabajo de aquellos beneficios adicionales a que por ley, los profesores, como empleados, tenían derecho, tal como el beneficio del Seguro por Desempleo.

No podemos perder de perspectiva que lo anterior constituye la interpretación de la agencia con el *expertise* en el asunto en conflicto y la que se dedica a poner en vigor la legislación laboral aquí pertinente. Por tanto, su interpretación, en ausencia de otra prueba que la desvirtúe, merece nuestra mayor deferencia. Más aún, si la interpretación de la agencia armoniza con el fundamento racional o fin esencial de la ley y la política pública que la inspira. En este sentido, recordemos que la Ley Núm. 74, *supra,* y la Ley de Beneficios por Incapacidad, deben ser interpretadas liberalmente para cumplir con su propósito reparador de promover la seguridad de empleos y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas. En la medida en que la interpretación efectuada por el Departamento del Trabajo se encuentra, además, apoyada y sostenida por un estudio de los documentos y demás prueba evaluada, deber ser respetada. En fin, los errores señalados no se cometieron. No hemos encontrado base en el expediente de la agencia administrativa que nos mueva a intervenir con su dictamen.

## V

Por los fundamentos expuestos, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones.