EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: Municipio de Aguada y Municipio Autónomo de Aguadilla <br><br> Peticionarios <br><br> v. <br><br> Junta de Calidad Ambiental Agencia Recurrida <br><br> Gil A. Morales, et al. <br><br> Recurridos | Certiorari <br><br> 2014 TSPR 7 <br><br> 190 DPR ____ |

Número del Caso: CC-2012-439

Fecha: 27 de enero de 2014

Tribunal de Apelaciones: Región Judicial de San Juan

Abogados de la Parte Peticionaria:

    Lcdo. Luis Sánchez Mercado
    Lcdo. Patricio Martínez Lorenzo

Abogados de la Parte Recurrida:

    Lcda. Johanna Rivera Cruz
    Lcdo. Luis Torres Asencio
    Lcda. Jessabet Vivas Capó
    Lcdo. David Rodríguez Andino

Materia: Derecho Administrativo – Legitimación activa de parte para presentar recurso de revisión judicial.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re: Municipio de Aguada y
    Municipio Autónomo de
        Aguadilla
       *Peticionarios*

           v.

 Junta de Calidad Ambiental
    *Agencia Recurrida*


    Gil A. Morales, et al.
       *Recurridos*

Certiorari

CC-2012-439

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico a 27 de enero de 2013.

Este recurso nos brinda la oportunidad de expresarnos una vez más en torno al requisito de legitimación activa necesario para poder presentar un recurso de revisión judicial. Particularmente, nos corresponde justipreciar si los criterios que a esos efectos establecimos en Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010), deben operar de igual manera cuando se solicita la revisión de una resolución de la Junta de Calidad Ambiental que aprueba una Declaración de Impacto Ambiental. Esto, ante el hecho de que conforme a la Ley de Procedimiento Administrativo Uniforme, *infra*, el trámite de evaluación de documentos ambientales no es un procedimiento adjudicativo

formal. Examinada la controversia, resolvemos en la afirmativa y adelantamos que revocamos la sentencia apelada.

                                    I

La presente controversia se origina ante una propuesta que hicieran los municipios de Aguada y Aguadilla (los peticionarios) para el desarrollo de un complejo hotelero, residencial y marítimo. El proyecto, denominado *Discovery Bay Resort & Marina*, comprende el desarrollo de 144 cuerdas de terreno y se ubicaría entre la comunidad Espinar del municipio de Aguada, las urbanizaciones García y Victoria y el complejo residencial Aponte de Aguadilla.[1] El mismo consiste en la construcción de dos diques para el control de inundaciones, un embalse, un canal de navegación, una marina con capacidad para 1,000 embarcaciones, un componente hotelero, unidades de vivienda y espacio comercial, entre otros usos.[2] Según descrito, ese proyecto tiene el propósito de proteger de las inundaciones a más de 3,200 personas y desarrollar el área como un destino turístico clave para la propuesta de Porta del Sol.[3]

Así las cosas, el 20 de diciembre de 2007 los peticionarios presentaron ante la Junta de Calidad

---

[1] Véase "Descripción del Proyecto", Declaración de Impacto Ambiental Final, Apéndice de la petición de <u>certiorari</u>, pág. 268.
[2] Id.
[3] Íd.

Ambiental (JCA) la correspondiente Declaración de Impacto Ambiental Preliminar (DIA-P).[4]

Tras presentarse ese documento, el 4 de febrero de 2008 el Sr. Jorge R. Sepúlveda Torres, en representación del Comité Aguadeños Pro Conservación del Ambiente, Inc., (CAPCA) solicitó ante esa agencia intervenir en los procedimientos relacionados a la evaluación del proyecto y que se realizaran vistas públicas.[5] Evaluada su solicitud, la JCA concedió la celebración de la vista pero denegó la intervención. Indicó que conforme al Reglamento para el proceso de presentación, evaluación y trámite de documentos ambientales (Reglamento Núm. 6510 de 22 de agosto de 2002) de esa agencia[6], los procedimientos de evaluación de documentos ambientales no son procedimientos adjudicativos, por lo que no existe el derecho a intervenir.[7] Así, la JCA celebró una vista pública el 2 de mayo de 2008 en la que los recurridos presentaron sus ponencias orales y escritas respecto a la DIA-P.[8]

---

[4] Id., pág. 238.
[5] Íd., pág. 243.
[6] Este era el Reglamento vigente a la fecha en que se presentó la Declaración de Impacto Ambiental de este caso y se había promulgado al amparo de la hoy derogada Ley Núm. 9 de 18 de junio de 1970 (12 L.P.R.A. ant. sec. 1121). Posteriormente, el Reglamento Núm. 7948 de 30 de noviembre de 2010 derogó el mismo.
[7] Íd., pág. 244.
[8] Véase, Informe del Panel Examinador. Íd., pág. 1253. También, se recibieron los comentarios de las siguientes agencias estatales y federales: Autoridad de Energía Eléctrica, Autoridad de Acueductos y Alcantarillados, Autoridad de Carreteras y Transportación, Autoridad de Desperdicios Sólidos, Autoridad de Tierras, Compañía de Turismo, Departamento de Recursos Naturales y Ambientales, Cuerpo de Ingenieros del Ejército de Estados Unidos, Servicio Federal de Pesca y Vida Silvestre, Instituto de Cultura Puertorriqueña y la Junta de Planificación.

Culminado ese proceso, el 27 de agosto de 2009 la JCA emitió la Resolución Interlocutoria Núm. R-09-26-1 aprobando la DIA-P y le ordenó a los peticionarios que en el término de un año presentaran una Declaración de Impacto Ambiental Final (DIA-F).[9]

En cumplimiento con lo ordenado, el 19 de enero de 2010 los municipios proponentes presentaron ante la JCA la DIA-F.[10] Luego de los trámites de rigor, el Área de Asesoramiento Científico de la JCA la evaluó[11] y el 14 de mayo de 2010 la agencia emitió una Resolución y Notificación Final aprobando ese documento por considerar que cumplía con los requisitos establecidos en la Ley de Política Pública Ambiental de 2004. Ley Núm. 416-2004 (12 L.P.R.A. sec. 8001, *et seq*).[12]

Inconforme con ello, el 14 de junio de 2010 el Sr. Gil A. Morales, la Sra. Ramonita Méndez Méndez, la Sra. Ada Torres y el Sr. Jorge Sepúlveda, de por sí y en representación de CAPCA (los recurridos), presentaron una moción de reconsideración ante la JCA.[13] En síntesis, alegaron que la DIA-F no evaluó todas las alternativas a la acción propuesta, no contestó los comentarios y cuestionamientos del público y de las agencias comentadoras, y no analizó adecuadamente los impactos ambientales significativos del proyecto. Atendida la

---

[9] Íd., pág. 251.
[10] Íd., pág. 260.
[11] Íd., pág. 1078.
[12] Véase, Resolución y Notificación Final Núm. R-10-13-6. Íd., pág. 1089.
[13] Íd., pág. 1097.

moción, la agencia se reafirmó en lo previamente dictaminado.[14]

No contestes con esa determinación, el 13 de octubre de 2010 los recurridos acudieron al Tribunal de Apelaciones mediante un recurso de revisión judicial.[15] En esencia, esbozaron argumentos similares a los que consignaron ante la agencia en su moción de reconsideración. Tanto la JCA como los municipios proponentes presentaron su oposición.[16] Además, la JCA presentó una moción informando sobre una sentencia que había emitido ese foro, en la que se desestimó un recurso de revisión judicial por falta de jurisdicción porque la parte recurrente no había sido parte interventora en el procedimiento administrativo que motivó el mismo.[17]

Atendido el recurso, el foro apelativo intermedio emitió sentencia el 23 de marzo de 2012 revocando parcialmente la resolución emitida por la JCA que aprobó la DIA-F. Determinó que los municipios proponentes debían ampliar la evaluación de ciertos elementos descritos en la

---

[14] Apéndice del recurso de revisión judicial KLRA 2010-01026, pág. 132.
[15] El 13 de diciembre de 2010 el proponente privado del proyecto, Cordeco Land Services, solicitó ante el Tribunal de Apelaciones comparecer como parte interventora. El Tribunal denegó esa petición. Apéndice de la petición de certiorari, págs. 1363-72.
[16] Apéndice del certiorari, págs. 1377, 1442.
[17] Se referían a la sentencia emitida en el recurso KLRA2010-0926, Melecón Warehouse, Inc. v. J.C.A. En ese caso se determinó que la parte recurrente no tenía legitimación para presentar el recurso de revisión judicial toda vez que no había sido parte interventora en los procedimientos que se llevaron ante la agencia. Véase "Moción Informativa", Apéndice de la petición de certiorari, pág. 1428.

sentencia.[18] En cuanto al planteamiento jurisdiccional resolvió que los recurridos tenían legitimación activa para presentar el recurso de revisión.[19] Sostuvo que siendo la evaluación de documentos ambientales un procedimiento informal no adjudicativo, era improcedente que los recurridos presentaran una solicitud de intervención ante la agencia como requisito para poder presentarlo. De otra parte, concluyó que los recurridos tenían legitimación activa para presentar ese recurso "por los daños concretos y reales que pueden sufrir con el desarrollo de este proyecto, particularmente por los posibles efectos directos y graves que el proyecto y la construcción de los diques puedan tener sobre sus respectivas comunidades, especialmente sobre la Comunidad Tablonal de Aguada". (Énfasis suprimido).[20]

Ahora bien, el 21 de marzo de 2012, pocos días antes de que el Tribunal de Apelaciones emitiera su dictamen, este Tribunal resolvió el caso de Lozada Sánchez, et al. v. JCA, 184 D.P.R. 898 (2012). Debido a ese precedente, el 9 de abril de 2012 los municipios proponentes presentaron una moción de reconsideración ante el Tribunal de Apelaciones y puntualizaron que el recurso de revisión judicial presentado por los recurridos no contenía

---

[18] En específico, se le ordenó que ampliaran la evaluación de: (1) la alternativa de disminuir la extensión y capacidad de la marina para minimizar los impactos a los ecosistemas del lugar; (2) posibilidad de un aumento o agravación del nivel de inundación en la Comunidad Tablonal y (3) las acciones de mitigación de los daños que se causará a los humedales. Íd., pág. 80.

[19] Íd., págs. 17-18.

[20] Íd.

alegaciones suficientes en derecho para establecer que conforme a la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2172), estos eran partes adversamente afectadas por la Resolución de la JCA.[21] Atendida esa moción, el Tribunal la declaró no ha lugar.

De dicha determinación los peticionarios presentaron el recurso de *certiorari* de epígrafe y señalan los siguientes errores:

> **Primer error**: Erró el TA al concluir en contravención a *Lozada,* que los recurrentes poseían legitimación activa, bajo la Sec. 4.2 de la L.P.A.U., para instar el recurso de revisión administrativa contra la aprobación por la JCA de la DIA-F para el Proyecto.

> **Segundo error**: Erró el TA al no concederle debida deferencia al criterio especializado de la JCA y proceder a sustituir el criterio de dicha agencia con el propio, ausente determinación de que la agencia especializada actuara ilegal, arbitraria o caprichosamente, y a pesar de existir en el record una base racional y evidencia sustancial para explicar y sostener la decisión de la JCA, invalidando así, parcialmente, la Resolución R-10-13-6 de la JCA y concluyendo que: (1) el análisis de alternativas en la DIA-F es insuficiente y es necesario evaluar "la alternativa de disminuir la extensión y capacidad de la marina, para minimizar los impactos a los ecosistemas del lugar"; (2) el análisis en la DIA-F de los efectos de la acción propuesta sobre la comunidad Tablonal es insuficiente y que es necesario evaluar "la probabilidad de un aumento o agravación del nivel de inundación en la comunidad Tablonal y cómo podría atenderse ese asunto"; y, (3) el Plan de Mitigación incluido en la DIA-F es insuficiente y es necesario evaluar "las acciones de mitigación de los daños que se causará a los humedales".

---

[21] Íd., pág. 1462.

El 26 de octubre de 2012 expedimos el auto solicitado y las partes han presentado sus respectivos alegatos. Contando con el beneficio de sus comparecencias, pasamos a resolver.

II

Antes de dirimir los méritos del recurso es preciso que atendamos el planteamiento de ausencia de legitimación activa aducido por los peticionarios. Esto debe hacerse aun cuando nadie lo haya cuestionado, ya que los asuntos jurisdiccionales son materia privilegiada y deben atenderse con preeminencia. García v. Hormigonera Mayagüezana, 172 D.P.R. 1, 7 (2007). En esencia, los peticionarios sostienen que el análisis de legitimación activa que ponderó el Tribunal de Apelaciones ignoró por completo las normas pautadas en Fund. Surfrider y otros v. A.R.Pe., supra, y en Lozada Sánchez et al. v. JCA, supra. Pasemos a exponer el derecho aplicable a este asunto.

A

Cuando una parte impugna una actuación gubernamental el análisis para determinar si el peticionario es la parte adecuada para entablar la reclamación se realiza en términos de la doctrina de autolimitación judicial conocida como legitimación activa o *standing*. MAPFRE v. E.L.A., res. el 13 de mayo de 2013, 2013 T.S.P.R. 56, 188 D.P.R. ____ (2013). Esto forma parte de los criterios que se evalúan para determinar si una controversia presentada ante los tribunales es justiciable, lo que significa que

"los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas". E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958). Este principio de justiciabilidad responde al rol asignado a la Rama Judicial en una distribución tripartita de poderes para asegurar que no actuará en áreas sometidas al criterio de las otras ramas del gobierno. Lozada Sánchez et al. v. JCA, supra, pág. 917.

Reiteradamente, hemos resuelto que una controversia abstracta, ausente de un perjuicio real y vigente a los derechos de la parte que los reclama no presenta el caso o controversia necesario para que los tribunales puedan intervenir. Lozada Sánchez et al. v. JCA, supra, págs. 916-917; Moreno v. Pres. U.P.R. II, 178 D.P.R. 969, 973 (2010); Lozada Tirado et al. v. Testigos Jehová, 177 D.P.R. 893, 924-925 (2010). Precisamente, el propósito de la doctrina de legitimación activa es que el tribunal se asegure de que en toda acción que se presente ante sí el reclamante tenga un interés genuino, que va a proseguir su causa de forma vigorosa y que todos los asuntos pertinentes serán colocados ante la consideración del tribunal. P.I.P. v. E.L.A., 186 D.P.R. 1, 11 (2012); Sánchez et al. v. Srio. de Justicia et al., 157 D.P.R. 360, 371 (2002).

De esta forma, se considera que una parte tiene legitimación activa o *standing* cuando: el demandante o promovente ha sufrido un daño claro y palpable; ese daño es inmediato, preciso, no abstracto ni hipotético; existe una relación causal razonable entre la acción que se ejecuta y el daño alegado; y la causa de acción surge al amparo de la Constitución o de alguna ley. Lozada Sánchez *et al.* v. JCA, supra, pág. 917; Fund. Surfrider y otros v. A.R.Pe., supra, pág. 572; Col. Peritos Elec. v. A.E.E., 150 D.P.R. 327, 331 (2000); Hernández Torres v. Gobernador, 129 D.P.R. 824, 835-836 (1992).

Estos requisitos se analizarán en el contexto de una persona particular como en el de un grupo u organización. En cuanto a esto hemos expresado que una asociación tiene legitimación para solicitar la intervención judicial por los daños sufridos por la agrupación y vindicar los derechos de la entidad. P.I.P. v. E.L.A., supra, pág. 12; Lozada Sánchez *et al.* v. J.C.A., supra, pág. 918; Fundación Surfrider, Inc. v. A.R.P.E., supra, pág. 572; Col. Ópticos de P.R. v. Vani Visual Center, 124 D.P.R. 559, 565 (1989). De esta forma, puede comparecer en defensa de sus intereses, en cuyo caso le corresponde demostrar que la colectividad sufre un daño claro, palpable, real, inmediato, preciso, no abstracto o hipotético. Fundación Surfrider, Inc. v. A.R.P.E., supra, págs. 572-573; Col. de Peritos Electricistas v. A.E.E.,

supra, pág. 331; Col. de Ópticos de P.R. v. Vani Visual Center, supra, pág. 565.

Por otra parte, una asociación también puede acudir al foro judicial a vindicar los derechos de uno de sus miembros aunque la organización en sí no haya sufrido daños propios. En este caso, es necesario que: 1) el miembro tenga legitimación activa para demandar a nombre propio; 2) los intereses que se pretendan proteger estén relacionados con los objetivos de la colectividad y 3) la reclamación y el remedio solicitado no requieran la participación individual de cada miembro. Fundación Surfrider, Inc. v. A.R.Pe., supra, pág. 573; Colegio de Peritos Electricistas v. A.E.E., supra, págs. 331-332; Col. de Ópticos de P.R. v. Vani Visual Center, supra, pág. 566.

En cuanto al requisito del daño que debe sufrir la persona que solicita la intervención judicial, hemos reiterado que puede basarse en consideraciones ambientales, recreativas o espirituales. Fundación Surfrider, Inc. v. A.R.Pe., supra, pág. 573; Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716, 723 (1974). En el caso de una organización, el mero interés en un asunto no es suficiente de por sí para establecer que una parte fue adversamente afectada por la decisión de una agencia. Fundación Surfrider Inc. v. A.R.Pe., supra, pág. 583. Además, las asociaciones vienen obligadas a demostrar esos elementos independientemente de cuan cualificadas estén

para evaluar la controversia de que se trate el caso. Íd.[22] Ello implica que la "puerta" no "está abierta" para que el tribunal considere todo caso que quiera incoar cualquier ciudadano. Íd., pág. 573.

Cabe señalar que los requisitos de legitimación activa discutidos no están aislados al procedimiento administrativo. Si bien es cierto que "las agencias no tienen una limitación de caso o controversia", el poder de revisión judicial no puede ejercerse en aquellas circunstancias en que se pretende una disputa abstracta cuya solución no tendrá controversias para las partes. Fundación Surfrider Inc. v. A.R.Pe., supra, págs. 571, 582. Por tanto, es imperativo que el recurrente satisfaga el requisito de legitimación cuando presente un recurso de revisión judicial. Id., pág. 574.[23]

En el contexto de los procedimientos administrativos, sabemos que una parte puede considerarse como agraviada e interesada a los efectos de participar en los procedimientos ante una agencia pero carecer de legitimación para presentar un recurso de revisión judicial. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, pág. 500. Recientemente tuvimos la oportunidad de expresarnos en cuanto a esto. En Fund. Surfrider y otros v. A.R.P.E, supra, mencionamos que quien

---

[22] Citando a Sierra Club v. Morton, 405 U.S. 727, 739 (1972).
[23] Citando a D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, pág. 500.

cuestione la actuación de una agencia mediante un recurso de revisión judicial tiene que demostrar que goza de legitimación activa en función de las disposiciones de la Sec. 4.2 L.P.A.U., supra, que preceptúa que una "parte adversamente afectada" por una orden o resolución final de una agencia podrá presentar ese recurso ante el Tribunal de Apelaciones. Al interpretar esa disposición dijimos que quien recurra en revisión debe satisfacer dos requisitos: (1) ser parte y (2) que la decisión de la agencia le haya afectado de manera adversa.[24] Íd., págs. 575-576. En cuanto este segundo requerimiento mencionamos que **"no es suficiente que la actuación gubernamental tenga un efecto sobre el litigante, sino que ese efecto tiene que ser adverso o desfavorable a sus intereses"**. (Énfasis nuestro) Fundación Surfrider Inc. v. A.R.Pe., supra, pág. 577. En específico, pautamos que la frase "adversamente afectada" significa que:

> la parte recurrente tiene un interés sustancial en la controversia porque sufre o sufrirá una **lesión o daño particular** que es causado por la acción administrativa que se impugna mediante el recurso de revisión judicial. El daño tiene que ser claro, específico y no puede ser abstracto, hipotético o especulativo. (Énfasis nuestro) Id., pág. 579.

De otra parte, recientemente resolvimos Lozada Sánchez et al. v. J.C.A, supra. Allí analizamos si lo resuelto en Fund. Surfrider y otros v. A.R.Pe., supra,

---

[24] Es "parte" para fines de la revisión judicial: el promovido o el promovente, y las personas naturales o jurídicas que previa solicitud formal al efecto, mediante el mecanismo de intervención la agencia las hizo partes. Véase, JP, Plaza Santa Isabel v. Cordero Badillo, 177 D.P.R. 177 (2009).

debía extenderse a los procedimientos administrativos tramitados al amparo de la Ley Núm. 76-2000.[25] Esta es una legislación que permite preterir el cauce administrativo en situaciones de emergencia en las agencias gubernamentales que tienen inherencia en la tramitación de endosos, permisos, consultas o certificaciones. Lozada Sánchez et al. v. J.C.A., supra, pág. 915. Resolvimos en la afirmativa toda vez a pesar de que los procedimientos al amparo de esa ley eran más flexibles, la propia ley establecía que no estaban exentos de revisión judicial, y al igual que en la L.P.A.U., se hacía referencia a que era la "parte adversamente afectada" quien podía presentar ese recurso. Íd., pág. 915.

En fin, quien pretenda mover la maquinaria judicial para que el tribunal revise una determinación de una agencia "tiene el peso de probar su legitimación en todas las etapas". Fundación Surfrider, Inc. v. A.R.Pe., pág. 585. "Esta legitimación se demuestra **mediante la alegación de hechos que permitan [al] foro judicial constatar** que es parte adversamente afectada por la decisión que se impugna". (Énfasis nuestro) Id.

Expuesto el marco jurídico que precede, pasemos a examinar el primer error señalado por los peticionarios.

III

Arguyen los municipios proponentes que los recurridos no tenían legitimación activa para presentar el recurso de

---

[25] 3 L.P.R.A. sec. 1931 et seq.

revisión judicial ante el Tribunal de Apelaciones. Sostienen que ese foro ignoró la norma de Lozada Sánchez et al. v. J.C.A., supra, y la de Fund. Surfrider y otros v. A.R.Pe., supra. En ese sentido, plantean que el Tribunal de Apelaciones no tuvo ante sí alegaciones suficientes para concluir conforme a esos precedentes que los recurridos, tanto en su carácter personal como en representación de CAPCA, tenían legitimación activa.[26]

Ahora bien, los recurridos nos invitan a que determinemos que en los casos en que se evalúan documentos ambientales no aplican los requisitos establecidos en Fundación Surfrider Inc. v. A.R.Pe., supra, en cuanto a la legitimación activa que deben demostrar las partes al presentar un recurso de revisión judicial.[27] Apuntan que el presente caso es distinguible del precitado porque se origina en un procedimiento informal de evaluación de documentos ambientales al que no le aplican las disposiciones de la L.P.A.U. referentes a los procedimientos adjudicativos.[28] Examinemos estos particulares.

A

Cuando por disposición de ley o reglamento una agencia deba adjudicar formalmente una controversia, los procedimientos deberán regirse por la Sec. 3.1 de la L.P.A.U., 3 L.P.R.A. sec. 2151. En dicha ley se define

---

[26] Alegato de los peticionarios, pág. 20.
[27] Alegato de los recurridos, pág. 21.
[28] Íd.

"adjudicación" como el pronunciamiento mediante el cual una agencia determina derechos, obligaciones o privilegios que correspondan a una parte. 3 L.P.R.A. sec. 2102 (b). Véase también, Dept. Educ. v. Sindicato Puertorriqueño, 168 D.P.R. 527 (2006). La esencia de los procedimientos adjudicativos formales consiste en evaluar y decidir una controversia fáctica aplicando a los hechos específicos del caso las normas y el derecho vigente. Torres Ramos v. Policía de Puerto Rico, 143 D.P.R. 783, 794 (1997).

En este tipo de procedimiento se deberán salvaguardar los siguientes derechos: 1) una notificación oportuna de los cargos, querellas o reclamos en contra de una parte; 2) presentar evidencia; 3) una adjudicación imparcial, y 4) que la decisión se base en el expediente. 3 L.P.R.A. sec. 2151. Además, mediante reglamentación, las agencias pueden conceder estas garantías procesales adicionales en procedimientos que no necesariamente sean formales. Marrero Caratini v. Rodríguez Rodríguez, 138 D.P.R. 215, 224 (1995).

Ahora bien, el caso ante nuestra consideración tiene su origen en un procedimiento informal de evaluación de documentos ambientales. Conforme a la precitada Sec. 3.1 de la L.P.A.U., supra, se considerarán procedimientos informales no cuasijudiciales que no estarán sujetos a las disposiciones de esa ley referentes a los procedimientos adjudicativos:

> todos los trámites o etapas del proceso de
> evaluación de documentos ambientales requeridos

> [por la] "Ley Sobre Política Pública Ambiental"
> y el reglamento aprobado al amparo de ésta. En
> ninguno de estos procedimientos o las etapas en
> que éstos se dividan, se requerirá a la agencia
> que fundamente sus resoluciones con
> determinaciones de hecho y conclusiones de
> derecho. El procedimiento administrativo para
> el trámite de documentos ambientales se regirá
> exclusivamente por la reglamentación adoptada
> por la Junta de Calidad Ambiental para estos
> fines. La reconsideración de las decisiones
> emitidas en todos estos casos se regirán por lo
> dispuesto en la sec. 2165 de este título…." 3
> L.P.R.A. sec. 2151 (a) (2).[29]

Como vemos, la L.P.A.U. establece específicamente que el trámite de evaluación de documentos ambientales es un procedimiento informal y lo supedita a la reglamentación que a esos efectos promulgue la JCA.

B

En Puerto Rico la protección del ambiente ostenta rango constitucional. La Sec. 19 del Art. VI de nuestra Constitución preceptúa que "[s]erá política pública del Estado Libre Asociado de Puerto Rico la más eficaz conservación de sus recursos naturales, así como el mayor

---

[29] Esta disposición de la L.P.A.U. referente a la informalidad de los procedimientos de evaluación de documentos ambientales se estableció mediante la Ley Núm. 323 de 6 de noviembre de 1999 que se promulgó con el propósito de aclarar que los trámites de documentos ambientales establecidos en el Artículo 4(c) de la hoy derogada Ley Núm. 9 de 18 de junio de 1970, se considerarían procedimientos administrativos informales e investigativos, sin función ni característica adjudicativa alguna. Específicamente, se mencionó que era necesario enmendar la Ley de Procedimiento Administrativo Uniforme "para dejar claro categóricamente y sin duda alguna que la aprobación de los documentos ambientales NO es un proceso adjudicativo, sino informativo, que no necesita incluir 'determinaciones de hecho y conclusiones de derecho' para considerarse completado". Véase, Exposición de Motivos, de la Ley Núm. 323 de 6 de noviembre de 1999, Leyes de Puerto Rico, pág. 1450.

desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad…".[30]

Cónsono con ese mandato constitucional, la Asamblea Legislativa aprobó la anterior Ley Núm. 9 de 18 de junio de 1970, "Ley de Política Pública Ambiental" que constituyó el primer esquema estatutario adoptado en Puerto Rico para atender los asuntos relacionados a la administración del medio ambiente. Véase, Misión Industrial v. JCA, 145 D.P.R. 908 (1998). Esta ley fue derogada por la actual Ley Núm. 416, supra, que establece la política pública del Gobierno de Puerto Rico respecto al impacto de las actividades del hombre en todos los componentes del medio ambiente natural.

Reconociendo la importancia y relación entre los factores sociales, económicos y ambientales, la Asamblea Legislativa estableció que como parte de su política pública el Gobierno de Puerto Rico debe procurar un desarrollo sustentable basándose en: (1) la más efectiva protección del ambiente y los recursos naturales; (2) el uso más prudente y eficiente de los recursos naturales para beneficio de toda la ciudadanía; (3) un progreso social que reconozca las necesidades de todos; y, (4) el logro y mantenimiento de altos y estables niveles de crecimiento económico y empleos. Art. 3 de la Ley Núm. 416, supra, (12 L.P.R.A. sec. 8001). Ante ello, la Ley Núm. 416, supra, estableció que todos los departamentos,

---

[30] Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 440.

agencias, municipios, corporaciones e instrumentalidades
públicas de Puerto Rico deben:

> Incluir en toda recomendación o informe sobre
> una propuesta de legislación y emitir, antes de
> efectuar cualquier acción o promulgar cualquier
> decisión gubernamental que afecte
> significativamente la calidad del medioambiente,
> una declaración escrita y detallada sobre:

> (A) El impacto ambiental de la legislación
> propuesta, de la acción a efectuarse o de
> la decisión a promulgarse;

> (B) cualesquiera efectos adversos al
> medioambiente que no podrán evitarse si
> se aprobase y aplicase la propuesta
> legislación, si se efectuase la acción o
> promulgase la decisión gubernamental de
> que se trate;

> (C) alternativas a la legislación propuesta,
> o a la acción o decisión gubernamental en
> cuestión;

> (D) la relación entre usos locales a corto
> plazo del medioambiente y la conservación
> y mejoramiento de la productividad a
> largo plazo, y

> (E) cualquier compromiso irrevocable o
> irreparable de los recursos naturales que
> estarían envueltos en la legislación
> propuesta, si la misma se [implantase];
> en la acción gubernamental, si se
> efectuase; o en la decisión, si se
> promulgase. Art. 4 de la Ley Núm. 416,
> supra, (12 L.P.R.A. sec. 8001a (b)(3)).

Esa declaración de impacto ambiental es un instrumento
de planificación que se solicita para asegurar que la
conservación y uso racional del medioambiente se considere
cuando se tomen decisiones gubernamentales sobre una
propuesta que pueda tener un impacto en el medio ambiente.
Misión Ind. P.R. v. J.C.A., supra. No constituye un
permiso, pues es "la primera etapa de un largo camino de

autorizaciones oficiales en el desarrollo de un proyecto".
Íd. Con el propósito de regular el proceso de
presentación, evaluación y trámite de esos documentos, la
JCA promulgó el Reglamento Núm. 6510, supra. Allí,
estableció que esos trámites serían informales, no
contenciosos, y que sus conclusiones no conllevarían
determinaciones adjudicativas, esto en consonancia con la
Sec. 3.1 de la L.P.A.U. En ese sentido la JCA evalúa los
documentos ambientales de manera fiscalizadora,
conduciendo un trámite investigativo que incluye la
obtención de comentarios y recomendaciones de agencias
gubernamentales y del público en general para determinar
si son adecuados.[31]

Por su parte, el Art. 12 (a) de la Ley Núm. 416,
supra, (12 L.P.R.A. 80029f), establece que la JCA podrá
celebrar vistas en relación a cualquiera de los asuntos
relacionados con la implantación de esa ley, lo que
incluye la evaluación de una DIA. El mencionado Reglamento
6510, supra, dispuso que las vistas que se celebraran a
esos efectos serían "investigativas informales".[32] Por
ello, la comparecencia del público a las mismas no es en
calidad de parte, según estas se definen en la L.P.A.U.[33] y

---

[31] Regla 202 (C) del Reglamento Núm. 6510, supra.
[32] Íd., Regla 270 (B).
[33] "Parte" significa toda persona o agencia autorizada por ley a quien
se dirija específicamente la acción de una agencia o que sea parte en
dicha acción, o que se le permita intervenir o participar en la misma,
o que haya radicado una petición para la revisión o cumplimiento de
una orden, o que sea designada como parte en dicho procedimiento. 3
L.P.R.A. sec. 2101 (j). En cuanto a la interpretación de esta
disposición véase, JP, Plaza Santa Isabel v. Cordero Badillo, supra.

los reglamentos de la agencia.[34] Tampoco procedería el mecanismo de intervención.[35]

Ahora bien, ese trámite informal está sujeto a revisión judicial. Al respecto, el Art. 12(a)(4) de la Ley Núm. 416, supra, (12 L.P.R.A. sec. 8002f) dispuso que:

> **Cualquier persona adversamente afectada** por una resolución, orden o decisión de la Junta de Gobierno podrá solicitar de ésta la reconsideración de su determinación o solicitar su revisión por el Tribunal de Apelaciones de Puerto Rico **de conformidad a las disposiciones de la "Ley de Procedimiento Administrativo Uniforme"**. 12 L.P.R.A. sec. 8002 f.

De manera que la propia Ley de Política Pública Ambiental, nos remite a la L.P.A.U. para propósitos de cómo se llevará a cabo la revisión de sus determinaciones. Esto es cónsono con la Sec. 4.2 de la L.P.A.U. (3 L.P.R.A. sec. 2172) que señala que la revisión judicial allí dispuesta será "el recurso exclusivo para revisar los méritos de una decisión administrativa **sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de [la Ley de Procedimiento Administrativo Uniforme]**". (Énfasis nuestro).

C

De lo antes discutido, aparenta existir una discrepancia entre lo dispuesto en la L.P.A.U. respecto a los requisitos para presentar un recurso de revisión judicial y lo referente a la naturaleza informal, no

---

[34] Regla 26.6 del Reglamento de Vistas Administrativas de la Junta de Calidad Ambiental, Reglamento Núm. 3672, según enmendado por el Reglamento "Enmiendas Regla 26" de 20 de marzo de 2000.
[35] Íd., Regla 26.7.

adjudicativa ni contenciosa del procedimiento de evaluación de documentos ambientales. Como adelantamos, los recurridos nos plantean que como en este tipo de procedimientos no intervienen "partes", según estas se definen en la L.P.A.U., no se les debe aplicar la doctrina establecida en Fund. Surfrider y otros v. A.R.Pe., supra.[36] No les asiste la razón. Veamos.

En la faena de interpretar las leyes es nuestra obligación "armonizar, hasta donde sea posible, todas las disposiciones de ley implicadas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente y salvaguarde la efectividad de la intención legislativa". IFCO Recycling v. Aut. Desp. Sólidos, 184 D.P.R. 712, 741 (2012). Debemos interpretar la ley "como un ente armónico, dándole sentido lógico a sus diferentes secciones, supliendo las posibles deficiencias cuando esto fuera necesario". Departamento Hacienda v. Telefónica, 164 D.P.R. 195, 204 (2005). Véase también, Farmacias Moscoso, Inc. v. K-mart Corp., 138 D.P.R. 497, 502 (1995); Gobernador v. Alcalde de Coamo, 131 D.P.R. 614, 621 (1992).

En el caso que nos ocupa, independientemente de que los procedimientos administrativos relacionados con una DIA sean informales y no se contemple la participación de

---

[36] En Lozada Sánchez et al. v. J.C.A., supra, también se solicitó la revisión de una decisión de la JCA que aprobó una DIA-F. No obstante, en ese caso no se cuestionó si los allí recurrentes eran partes para fines del procedimiento administrativo, por lo que nos concentramos en resolver si estos fueron adversamente afectados por la decisión de la agencia a los fines de auscultar si poseían legitimación activa para presentar el recurso de revisión judicial.

"partes", la propia Ley Núm. 416, supra, nos dirige a la sección 4.2 de la L.P.A.U. para que rija el proceso de revisión judicial. Además, la Ley Núm. 416, supra, consigna que cualquier persona adversamente afectada por una decisión de la JCA podrá presentar un recurso de revisión judicial conforme a las disposiciones de la L.P.A.U. Es decir, a pesar de que el legislador entendió que la evaluación de documentos ambientales es de naturaleza informal y no contenciosa, quien solicite la revisión de una Resolución Final de la JCA aprobando una DIA debe hacerlo conforme a las disposiciones de la L.P.A.U. que regulan ese recurso. Por el hecho de que en la evaluación de documentos ambientales no participan "partes" según estas se definen para propósitos de un procedimiento adjudicativo formal, no podemos interpretar que en estos los requisitos de legitimación activa operan de manera diferente. Y es que no puede ser de otra forma, pues la propia L.P.A.U. preceptúa que el recurso de revisión judicial que dispone ese estatuto será el único mecanismo para solicitar que el tribunal revise una determinación de una agencia, tenga esta su origen en un procedimiento formal o informal.

Por lo tanto, lo resuelto en Fundación Surfrider Inc. v. A.R.Pe., supra, le es de aplicación a los recurridos. Pues tal como mencionamos en Lozada Sánchez et al. v. J.C.A., supra, "[r]esolver de otra forma sería burlar el principio de justiciabilidad que ha permeado por décadas

en nuestro ordenamiento jurídico. Dicho de otro modo, sería abrir la puerta para que el Tribunal de Apelaciones emita opiniones consultivas sin que exista una controversia viva y latente." Id., pág. 916. Y como nos ilustra el Prof. Demetrio Fernández, debe distinguirse que cuando se presenta un recurso de revisión judicial se trata de una situación distinta a la que se da en la agencia toda vez que se recurre al tribunal. D. Fernández, op cit., pág. 500. En cuanto a esto debe recordarse que "[l]a presencia de una controversia justiciable es lo que activa el poder judicial". Fund. Arqueológica v. Depto. De la Vivienda, 109 D.P.R. 387, 392 (1980). De lo contrario, el tribunal no tendrá jurisdicción para intervenir.

Resuelto este asunto, evaluemos si los recurridos lograron demostrar mediante sus alegaciones que poseen legitimación activa.

D

Ciertamente, cuando se cuestiona la legitimación activa de un litigante, se debe asumir que las alegaciones realizadas en su recurso son ciertas y se debe evaluar la causa de acción de la manera más favorable para el demandante. Crespo v. Cintrón, 159 D.P.R. 290, 299 (2003). Ahora bien, aun al hacer ese ejercicio en este caso, arribamos a la conclusión de que los recurridos no tienen legitimación activa. Examinemos las alegaciones de estos. Veamos.

En su recurso de revisión, los recurridos hicieron referencia a una ponencia que el Sr. Gil A. Morales Méndez y la Sra. Ramonita Méndez presentaron ante la JCA. Señalan que allí "presentaron sus serias preocupaciones en relación a la construcción de los diques del proyecto, el efecto en los problemas serios de inundabilidad, de seguridad de propiedad y de vida en su lugar de residencia, la Comunidad Tablonal de Aguada y los cambios geotécnicos recientes en el lugar donde se pretende construir el proyecto y los diques".[37] Asimismo, se menciona que el Sr. Jorge R. Sepúlveda sometió otro escrito similar a esos efectos.[38] En cuanto a estas ponencias basta señalar que se refieren a la DIA-P. La DIA-P es el documento ambiental que presenta una agencia proponente para consultar y obtener los comentarios de otras agencias y del público en cuanto a la acción propuesta.[39] Por su parte, la DIA-F es el documento en el que se discuten esos comentarios y se exponen las modificaciones aplicables.[40] La revisión judicial que se presentó en este caso versa sobre la resolución de la JCA que aprobó una DIA-F. Por lo tanto, los recurridos tenían que establecer en qué manera particular les afectaba la aprobación de la DIA-F, teniendo presente lo que constituye ese documento. Al ser así, se desprende que las

---

[37] Véase, Recurso de revisión judicial, Apéndice de la petición de certiorari, pág. 1183.
[38] Íd.
[39] Regla 203 del Reglamento Núm. 6510, supra.
[40] Íd.

ponencias referentes a la DIA-P no aportan a establecer cómo la resolución recurrida, que versa sobre una DIA-F, les afecta adversamente.

Por otra parte, esbozaron que "se afecta directamente la seguridad de las comunidades en la zona"[41] y que "el proyecto de canalización propuesto aumenta el nivel de inundación del área".[42] También, apuntan que la DIA-F no discute adecuadamente los impactos de canalización de los cuerpos de agua del área y que esto podría afectar directamente la seguridad de la comunidad Tablonal.[43] Además, sostuvieron que la acción propuesta impactará significativamente los humedales del área cercana al proyecto, el estuario del Caño Madre Vieja, varias especies en peligro de extinción y terrenos de la Reserva Agrícola del Valle del Coloso.[44]

En Fundación Surfrider Inc. v. A.R.Pe., supra, evaluamos unas alegaciones similares a las del caso de autos. Por su pertinencia, pasamos a citar "in extenso" lo que allí expresamos:

> **El hecho de ser vecino, sin más, no le confiere legitimación a quien impugne una determinación de una agencia,** ya sea en casos de permisos de construcción o en casos de zonificación y planificación. Siempre es imprescindible que el recurrente satisfaga el requisito de daño y la relación causal de esa lesión con la actuación administrativa.
>
> Según la norma aplicable, el señor Richter no logró demostrar que se verá adversamente

---

[41] Íd., pág. 1199.
[42] Íd., pág. 1200.
[43] Íd., pág. 1202.
[44] Íd., págs. 1210,1218-1220, 1224.

afectado por la determinación administrativa. […] el señor Richter escuetamente alegó lo siguiente: (1) que reside "en el barrio Ensenada de Rincón, cerca del proyecto objeto del caso de autos", (2) que actualmente está afectado por un problema de distribución de agua, (3) que "entiende que este problema se agravará con el aumento de consumo que significa este proyecto", (4) "que sus intereses se verán afectados porque este tipo de desarrollo aumenta la densidad poblacional y por lo tanto rompe la armonía y altera las características de su vecindario". Tanto en los foros judiciales como en las comparecencias en el procedimiento administrativo, el señor Richter escuetamente alegó que es "vecino" del proyecto, **pero no indicó dónde reside.** Lo único que aparece en la hoja de notificación del recurso ante nuestra consideración es un apartado postal. **No se alegó en el recurso la dirección residencial del copeticionario y cuán próxima está la alegada residencia al proyecto en cuestión.** De hecho, en todas las comparecencias ante la agencia y ante los foros judiciales, se establece dónde se ubicará el proyecto en el Barrio Ensenada. Sin embargo, no hay dato alguno sobre dónde reside Richter **ni cuán próxima está su residencia del proyecto en cuestión.**

**Era necesario que el copeticionario estableciera la proximidad de su residencia con relación al proyecto,** ya que los intereses que alega que se verán afectados por la decisión administrativa dependen de ese hecho. La **distancia entre la residencia de Richter y el proyecto es un elemento clave** […]El hecho de que el copeticionario viva en el Barrio Ensenada no significa que resida en el mismo vecindario en dónde estará ubicado el proyecto, pues un barrio puede ser tan extenso que contenga varios vecindarios. De hecho, ni siquiera se alegó que el peticionario reside en el mismo vecindario dónde se desarrollaría el proyecto. Fundación Surfrider Inc. v. A.R.Pe., supra, págs. 587-588.

En la DIA-F se describe que el proyecto en controversia se desarrollará en un predio ubicado entre la Comunidad Espinar de Aguada, las Urbanizaciones García y Victoria y el Residencial Público Aponte de Aguadilla. No se menciona allí la comunidad Tablonal, donde los

recurridos alegan que residen. En su escrito estos tampoco nos indican la cercanía de su comunidad en cuanto al lugar donde ubicará el proyecto. Por lo tanto, conforme al precedente establecido sus alegaciones son insuficientes para establecer que tienen legitimación activa.

De otra parte, los recurridos alegan daños que no son particularizados, pues se refieren a la comunidad en general. Así por ejemplo, estos mencionan el alegado efecto negativo que tiene la aprobación de la DIA-F en los humedales, las especies en peligro de extinción y el estuario del Caño Madre Vieja. Empero, no mencionan qué daño específico es el que sufrirán ellos en particular. "Aun en los casos derivados de precepto constitucional o estatuto el demandante debe alegar que ha sufrido un 'claro y palpable daño, no importando que el tipo de daño esté compartido por una extensa clase de otros posibles litigantes'". Fund. Arqueológica v. Depto. De la Vivienda, supra, pág. 391.[45] Las alegaciones no nos ponen en posición de adjudicar cuáles son los daños precisos que cada uno de los recurridos sufre por la aprobación de la DIA-F.

En cuanto a CAPCA, basta señalar que no menciona en sus escritos los daños que la aprobación de la DIA-F le causa a esa colectividad. Por lo que no tiene legitimación activa en ese aspecto. De otra parte, ya resolvimos que los recurridos no tienen legitimación

---

[45] Citando a Warth v. Seldin, 422 U.S. 490, 498 y 501 (1975).

activa, por lo que tampoco esta tendría legitimación para comparecer a nombre de estos.

IV

Por lo antes expuesto, se revoca la sentencia del Tribunal de Apelaciones por cuanto los recurridos no tenían legitimación activa para presentar ese recurso. Resolvemos que quien solicite la revisión de una resolución que aprobó una DIA-F, tienen la obligación de acreditar su legitimación activa mediante alegaciones suficientes conforme a la norma pautada en Fundación Surfrider Inc. v. A.R.Pe., supra.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re: Municipio de Aguada y
    Municipio Autónomo de                Certiorari
       Aguadilla
       *Peticionarios*

                            CC-2012-439

      v.

Junta de Calidad Ambiental
    *Agencia Recurrida*


   Gil A. Morales, et al.
     *Recurridos*


SENTENCIA

En San Juan, Puerto Rico, a 27 de enero de 2014.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones emitida el 23 de marzo de 2012, por cuanto los recurridos no tenían legitimación activa para presentar ese recurso. Resolvemos que quien solicite la revisión de una resolución que aprobó una DIA-F, tienen la obligación de acreditar su legitimación activa mediante alegaciones suficientes conforme a la norma pautada en Fundación Surfrider Inc. v. A.R.Pe., 178 D.P.R. 563 (2010).

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

La Jueza Asociada señora Fiol Matta disiente con opinión escrita, a la cual se une el Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Estrella Martínez disiente con las siguientes expresiones:

"El Juez Asociado señor Estrella Martínez disiente de lo resuelto por este Tribunal, por entender que aún bajo los criterios adoptados en Fund. Surfrider y otros v. A.R.Pe., 178

D.P.R.563 (2010) y <u>Lozada Sánchez, et al. v.</u> <u>J.C.A.</u>, 184 D.P.R. 898 (2012) los daños alegados son lo suficientemente específicos para determinar que los recurridos poseen legitimación activa. Desde el inicio de la controversia, los recurridos hicieron señalamientos específicos ante el foro administrativo. Específicamente, identificaron la problemática de inundaciones en el sector Tablonal y no basaron la posibilidad de que las mismas incrementaran en cuestiones hipotéticas, ya que señalaron expresamente que el diseño de los diques propuestos no se ajusta al aprobado por el Cuerpo de Ingenieros del Ejército de los Estados Unidos. La participación de los recurridos y las agencias en las vistas públicas fue tan efectiva que la Junta de Calidad Ambiental (JCA) determinó, mediante Resolución, que los proponentes debían atender ciertas recomendaciones. Una vez aprobada la DIA-F, los recurridos nuevamente hicieron señalamientos específicos y suficientes. Del expediente se desprende que los recurridos cuestionaron que la DIA-F no cumplió con las recomendaciones emitidas por la JCA en su Resolución. Incluso detallaron minuciosamente los vicios que adolecía la DIA-F, en torno al cumplimiento de la legislación y reglamentación que regula desarrollos en presencia de humedales, acuíferos y especies en peligro de extinción.

El Tribunal de Apelaciones correctamente identificó que la DIA-F no tomó en consideración ni mucho menos discutió la viabilidad de diseñar un proyecto alternativo que no impacte de manera tan agresiva el medioambiente del área, requisito impuesto por el Reglamento para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales, Reglamento de la JCA Núm. 6510 de 22 de agosto de 2002. El foro intermedio determinó, además, que la DIA-F no evaluó adecuadamente el impacto que el proyecto propuesto tendría sobre los humedales del área, y catalogó como insuficientes las medidas de mitigación. También señaló que la DIA-F no discutió el impacto de la canalización de las aguas sobre la comunidad de Tablonal, la cual se encuentra adyacente al Río Culebrinas, uno de los cuerpos de agua que serán impactados por el desarrollo del proyecto. Acertadamente, el Tribunal de Apelaciones ordenó a los peticionarios atemperar la DIA-F a las observaciones contenidas en la Sentencia.

Resulta incuestionable la legitimación activa de los recurridos, a la luz de lo anteriormente discutido. No nos encontramos ante asuntos abstractos e hipotéticos. Una mayoría de este Tribunal no debió pasar por alto la realidad de los daños específicos a los que se exponen los recurridos y la relación directa entre las alegaciones, cuestionamientos y señalamientos de estos y las acciones que la JCA y el Tribunal de Apelaciones le han requerido a los peticionarios, en diversas etapas."

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Municipio de Aguada y
Municipio Autónomo de
Aguadilla
        Peticionarios                                   *CERTIORARI*

            v.
                                        CC-2012-439
 Junta de Calidad Ambiental
     Agencia recurrida

   Gil A. Morales, *et al.*
        Recurridos


Opinión disidente emitida por la Jueza Asociada señora Fiol
Matta a la cual se unen el Juez Presidente señor Hernández
Denton y la Juez Asociada señora Rodríguez Rodríguez


En San Juan, Puerto Rico, a 27 de enero de 2014.

La Opinión que suscribe hoy la mayoría del Tribunal cierra aún más las puertas de este foro a la litigación de casos ambientales recurriendo a una supuesta ausencia de legitimación activa cuando, aún bajo los criterios adoptados en Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010) y Lozada Sánchez, et al. v. JCA., 184 D.P.R. 898 (2012) las alegaciones de los recurridos son claramente suficientes.

Por estimar que la mayoría sigue en la trayectoria equivocada que trazó en los casos mencionados, reiteramos nuestras expresiones

disidentes emitidas entonces.[46] En estas, expusimos que el grado de especificidad exigido para alegar los daños en casos ambientales era excesivo y daba al traste con nuestro desarrollo jurisprudencial sobre la doctrina de legitimación para acciones públicas a nombre propio y por terceros.[47] También advertimos que en Puerto Rico los requisitos de legitimación en estos casos deben ser más flexibles que los de la jurisdicción federal. Además, llamamos la atención del Tribunal porque, aun dándolos por buenos, los criterios adoptados en ambos casos fueron aplicados erróneamente, negándosele el acceso a los tribunales a personas que sustentaron sus alegaciones de daños particulares y ambientales en prueba que constaba en el expediente.[48]

Lo mismo sucede en el presente caso. La mayoría de este Tribunal entiende que los recurridos no alegaron con suficiencia los daños para acreditar la legitimación activa necesaria para impugnar los documentos de impacto ambiental (DIA-F) del proyecto. Llega a esta conclusión aunque se alegan clara y específicamente los daños que

---

[46] Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010) (Opinión disidente de la jueza asociada Fiol Matta); Lozada Sánchez, et al. v. JCA., 184 D.P.R. 898 (2012) (Opinión disidente de la jueza asociada Fiol Matta).

[47] Surfrider, supra, pág. 612 (Opinión disidente de la jueza asociada Fiol Matta).

[48] Lozada, supra, pág. 972 (Opinión disidente de la jueza asociada Fiol Matta).

este causaría a la comunidad y al medio ambiente, así como el carácter inminente de dichos daños. Los recurridos exponen que su comunidad sufre de problemas de inundaciones y que queda próxima al desarrollo evaluado en la DIA-F. Aducen que se verán afectados por la construcción del proyecto que podría alterar los niveles de agua en casos de inundaciones.[49] Respecto a los daños que podría sufrir la comunidad de los recurridos, el Tribunal de Apelaciones determinó que "la DIA-F no examinó ni discutió razonablemente el asunto relativo a los riesgos de inundabilidad en la zona".[50]

A pesar de ello, utilizando los casos de Surrider y Lozada, la Opinión mayoritaria le niega a los recurridos el acceso a los tribunales en espera de que sufran las consecuencias de los daños ambientales que se intentan impedir. De esta manera se revalida un análisis formalista del derecho que resulta en un endurecimiento selectivo de los requisitos de legitimación activa cuando se trata de

---

[49] La Opinión mayoritaria reconoce que el "proyecto tiene el propósito de proteger de las inundaciones a más de 3,200 personas y desarrollar el área como un destino turístico". Opinión mayoritaria, pág. 2. Sin embargo, omite mencionar que de la DIA-F surge que los diques propuestos para el proyecto están diseñados para proteger de inundaciones a las familias de la Comunidad Espinar de Aguada, Barrio Victoria y parte del casco urbano en el Municipio de Aguadilla, pero no protegen a la Comunidad Tablonal de Aguada, donde residen los recurridos. Apéndice del *Certiorari*, pág. 297.

[50] Apéndice del *Certiorari*, pág. 60.

la revisión judicial de determinaciones administrativas en casos ambientales.

Entiendo que el expediente de este caso demuestra un grado suficiente de especificidad en cuanto a la alegación de los daños aun bajo los criterios adoptados en Surfrider y Lozada. Conforme a ello y a la doctrina de legitimación activa que entiendo correcta y que expuse en mis disensos en los casos arriba citados, afirmo que los recurridos tienen legitimación activa suficiente para presentar su causa de acción en los tribunales de Puerto Rico. Por no ser esta la decisión mayoritaria, disiento.


                              Liana Fiol Matta
                              Jueza Asociada